EXHIBIT A

**SCHEDULE A**
**DESCRIPTION**

**Block 1751 and Lot 29**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of 126th Street, distant 170 feet Westerly from the corner formed by the intersection of the Northerly side of 126th Street with the Westerly side of Park Avenue;

RUNNING THENCE Northerly parallel with Park Avenue and part of the way through a party wall, 99 feet 11 inches to the center line of the block;

THENCE Westerly along the said center line of the block, 25 feet;

THENCE Southerly parallel with Park Avenue and part of the way through another party wall, 99 feet 11 inches to the Northerly side of 126th Street;

THENCE Easterly along the Northerly side of 126th Street, 25 feet to the point or place of BEGINNING.

**Premises known as 51 East 126th Street, New York, New York 10035**

**EXHIBIT B**



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2021031800950004001EFCC9

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 42 |
|---|---|

| Document ID: 2021031800950004 | Document Date: 03-11-2021 | Preparation Date: 03-18-2021 |
|---|---|---|
| Document Type: AGREEMENT | | |
| Document Page Count: 40 | | |

**PRESENTER:**
RIDGE ABSTRACT CORP. (WR ) PICK UP
9201 4TH AVE,SUITE 502
RAC6786-M
BROOKLYN, NY 11209
718-338-0065
RA11223@AOL.COM

**RETURN TO:**
NUBRIDGE COMMERCIAL LENDING, LLC
21680 GATEWAY CENTER DR
#250
DIAMOND BAR, CA 91765

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1751 | 29 | Entire Lot | 51 EAST 126 STREET |

Property Type: APARTMENT BUILDING

**CROSS REFERENCE DATA**

CRFN: 2016000166209
☒ Additional Cross References on Continuation Page

**PARTIES**

**PARTY 1:**
51 EAST 126TH STREET LLC
401 FIRST AVE, 5D-4
NEW YORK, NY 10010

**PARTY 2:**
NUBRIDGE COMMERCIAL LENDING, LLC
21680 GATEWAY CENTER DR, #230
DIAMOND BAR, CA 91765

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 1,300,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 237.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed       03-22-2021 08:29
City Register File No.(CRFN):
**2021000103271**

*Jannette M Hill*

*City Register Official Signature*

-------------------------- [Space Above This Line For Recording Data] --------------------------

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

| | | | |
|---|---|---|---|
| **Loan No:** | | **District:** | |
| **Premises:** | 51 East 126th Street | **Town:** | |
| | New York, NY 10035 | **County:** | New York |
| **Volume:** 8 | | **State:** | New York |
| **Section:** 6 | | | |
| **Block:** 1751 | | | |
| **Lots:** 29 | | | |

**Borrower:** 51 East 126th Street, LLC
**Borrower's** 51 East 126th Street, New York, NY 10035

**Lender:** NuBridge Commercial Lending, LLC
**Lender's Notice Address:** 21680 Gateway Center Drive #230, Diamond Bar CA, 91765

**Note Amount: $1,300,000.00**

**Exhibits A, B and C are incorporated herein by reference**


**THIS SECURITY INSTRUMENT DOES NOT COVER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLIJNG UNITS, EACH HAVING THEIR OWN COOKING FACILITIES**

After recording
return to:
NuBridge Commercial Lending,
LLC
21680 Gateway Center Drive #230
Diamond Car, CA 91765

Consolidation, Extension and Modification
Agreement (New York)
Loan #

Page 1

This CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT (the "**Agreement**") dated as of March 11, 2021, is executed by **51 East 126ᵗʰ Street, LLC**, a corporation organized and existing under the laws of the State of New York, as mortgagor ("**Borrower**"), to and for the benefit of NuBridge Commercial Lending, LLC, a limited liability company organized and existing under the laws of the State of Delaware, as mortgagee ("**Lender**").

WHEREAS Borrower is indebted to Lender in the original principal amount of One Million Three   Hundred Thousand dollars 0/100 ($1,300,000.00, and Borrower and Lender desire to secure (a) the repayment of that indebtedness, with interest, and all renewals, extensions and modifications thereof, (b) the repayment of any future advances, with interest thereon made by Lender to Borrower, and (c) the performance of all of Borrower's obligations, covenants and agreements stated herein and consolidated herewith; and

WHEREAS Borrower has an interest in the real property located in the County of Kings, State of New York, and described in Exhibit A attached to this Agreement and incorporated by reference (the "**Mortgaged Property**").

Borrower hereby covenants and agrees with Lender as follows:

1.   **Borrower's Assumption of Obligations under Notes and Security Instruments.**

This Agreement is intended to and shall consolidate, modify and restate in their entirety those mortgages, deeds of trust or other security instruments (the "**Security Instruments**") listed on Exhibit B attached hereto and the obligations and liabilities of the related notes given by the Borrower and secured by such Security Instruments (the "**Notes**") and Borrower hereby warrants and represent that the principal amount outstanding under the Notes and Security Instruments is $1,176,000.00 and that there are no offsets, defenses, or counterclaims against the payment of said amount.  The terms of this Agreement, including all Exhibits hereto, supercede in their entirely the terms set forth in the Security Instruments. Borrower assumes all of the obligations and liabilities of the Notes and Security Instruments.   Borrower also assumes all of the obligations and liabilities in all agreements, whether or not listed in Exhibit B, which consolidate, modify or extend such Notes and Security Instruments.

2.   **Agreement to Consolidate and Modify the Notes.**

Borrower agrees that the obligations under the Notes and Security Instruments (and under all other agreements which consolidated, modified or extended the obligations under the Notes) shall be and are hereby consolidated.  To that end, Borrower has concurrently herewith executed and delivered to Lender an Amended and Restated Promissory Note (the "**Consolidated Note**") which consolidates, amends and restates in their entirety the terms and provisions of the Notes, as reflected in that certain Loan and Security Agreement with Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**").

3.     **Agreement to Consolidate and Modify the Security Instruments.**

Borrower agrees that the rights and obligations under the Security Instruments (and under all other agreements which consolidated, modified or extended rights and obligations under the Security Instruments) shall be and are hereby consolidated and that Lender's rights in the Mortgaged Property shall be and are hereby combined so that Lender has one real estate security interest (the **"Consolidated Mortgage"**) securing the Consolidated Note evidencing Borrower's indebtedness to Lender.  Borrower and Lender agree that the terms of the Consolidated Mortgage are hereby amended and restated in their entirety to be the terms which are set out in Exhibit C hereto.  As consolidated and restated hereby, the terms and provisions of the Security Instruments shall remain in full force and effect and are hereby ratified and confirmed by Borrower in all respects.  For purposes of the Consolidated Mortgage, Borrower's address stated below and Lender's address stated below shall be the addresses of Borrower and Lender, respectively, unless and until modified in accordance with the terms of the Consolidated Mortgage.

4.     **Borrower's Warranties.**

Borrower covenants that Borrower is lawfully seised of an estate in the property and has the right to consolidate, modify and extend the Notes and Security Instruments (and, if this Agreement is on a leasehold, that the ground lease is in full force and effect without modification except as noted in Exhibit D, if any, attached hereto and without default on the part of either lessor or lessee thereunder) and that Borrower will defend the title to the Mortgaged Property against all claims and demands, subject to the Permitted Encumbrances as defined in the Consolidated Mortgage.  Borrower also covenants and warrants that there are no offsets, counterclaims or defenses against the indebtedness now unpaid or against the Consolidated Note or the Consolidated Mortgage.

5.     **Termination; Change; Amendments.**

This Agreement may not be terminated, changed or amended except by a written agreement signed by the party whose rights or obligations are being changed by that Agreement.

6.     **Spreader.**

To the extent that the Security Instruments do not constitute a lien upon all of the Mortgaged Property, this Agreement shall spread the lien of the Security Instruments to all of the Mortgaged Property as if the Security Instruments so provided upon the date of their execution and delivery.

**[Remainder of Page Intentionally Left Blank.]**

IN WITNESS WHEREOF, Borrower and Lender have signed and delivered this Agreement under seal (where applicable) or have caused this Agreement to be signed and delivered under seal (where applicable) by their duly authorized representative.  Where applicable law so provides, Borrower and Lender intend that this Agreement shall be deemed to be signed and delivered as a sealed instrument.

BORROWER:

51 East 126th Street, LLC

BORROWER NOTICE ADDRESS:

51 East 126th Street, New York, NY 10035

The name, chief executive office and organizational identification number of Borrower (as Debtor under any applicable Uniform Commercial Code) are:
Debtor Name/Record Owner:
51 East 126th Street, LLC

Debtor Chief Executive Office Address:
401 First Ave. 5D-4, New York, NY 10010

**LENDER**:

**NuBridge Commercial Lending LLC**

By: _____
Name: <u>Jorge L. Ramos</u>
Title:   <u>Executive Vice President</u>

**LENDER NOTICE ADDRESS**

21680 Gateway Center Drive, #230
Diamond Bar, CA 91765


Prepared by, and after recording
return to:
NuBridge Commercial Lending LLC
21680 Gateway Center Drive, #230
Diamond Bar, CA 91765

## ACKNOWLEDGEMENT

STATE OF NEW YORK

COUNTY OF **KINGS**

On this  **11ᵗʰ day of  March, 2021** before me the undersigned, personally appeared

**Vanessa Turner**

personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person who acted on behalf of the individual, executed the instrument and that such individual made such appearance before the undersigned in the County of **KINGS**, State of New York.

_____

Notary

RICHARD C. LORENZO
NOTARY PUBLIC, State of New York
No. 01LO4685470
Qualified in Richmond County
Commission Expires: May 31, 20 252

**Consolidation, Extension and Modification
Agreement (New York)
Loan #⁻**

**Page A-3**

**ACKNOWLEDGEMENT**

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

State of California
County of Los Angeles

On March 11, 2021 before me Josh Christian Miller, Notary Public, personally appeared Jorge L. Ramos, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**

**Notary Public:** Los Angeles County, California
**Printed Name:** Josh Christian Miller
**My Commission expires:** December 9, 2022
**Commission #:** 2270352

JOSH CHRISTIAN MILLER
Notary Public - California
Los Angeles County
Commission # 2270352
My Comm. Expires Dec 9, 2022

Consolidation, Extension and Modification
Agreement (New York)
Loan #                                                                              Page A-4

EXHIBIT A
TO
CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

[Description of the Land]

## EXHIBIT B
## TO
## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

(1)   The Mortgage given by 51 EAST 126TH STREET LLC and dated March 11, 2021 in favor of NuBridge Commercial Lending LLC securing the original principal amount of $482,771.63.  This Mortgage and will be recorded together with this Agreement in the County of New York, State of New York,.  This Mortgage secures a Note dated March 11, 2021.

(2)   The Mortgage given by 51 EAST 126TH STREET LLC dated April 26, 2016 in favor of 126th Street Funding LLC, securing the original principal amount of $499,999.00, recorded May 13, 2016 in CRFN 2016000166209, in the County of New York, State of New York.  This Mortgage secures a Note dated April 26, 2016.

This Mortgage was assigned by 126th Street Funding LLC to 126th Street Funding LLC, by assignment dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370494, in the County of New York, State of New York.

(3)   The Mortgage given by 51 EAST 126TH STREET LLC dated October 16, 2016 in favor of Readycap Commercial, LLC, securing the original principal amount of $385,001.00, recorded October 20, 2016 in CRFN 2016000370495. This Mortgage secures a Note dated October 16, 2016.

A Consolidation, Extension and Modification Agreement given by 51 EAST 126TH STREET LLC to Readycap Commercial, LLC dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370496 , in the County of New York, State of New York, consolidates the above Mortgages to form a single lien in the amount of $885,000.00.

This Mortgage was assigned by Readycap Commercial, LLC to Federal Home Loan Mortgage Corporation, by assignment dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370497, in the County of New York , State of New York. Assignment of Mortgage in CRFN 2016000166209 and CRFN 2016000370495 as consolidated

This Mortgage was assigned by Federal Home Loan Mortgage Corporation to Deutsche Bank National Trust Company, by assignment dated June 27, 2017, recorded July 3, 2017 in CRFN 2017000243849, in the County of New York, State of New York. Assignment of Mortgage in CRFN 201600166209 and CRFN 20100370495 as consolidated

This Mortgage was assigned by Deutsche Bank National Trust Company to NuBridge Commercial Lending LLC, by assignment dated March 11, 2021, and intended to be recorded simultaneously herewith, in the County of New York, State of New York.

Mortgages #1, #2 and #3 are consolidated by this agreement dated March 11, 2021 between 51 EAST 126TH STREET LLC and NuBridge Commercial Lending LLC to form a single lien in the amount of $1,300,000.00.

Consolidation, Extension and Modification
Agreement (New York)
Loan #

**EXHIBIT C**

Consolidation, Extension and Modification
Agreement (New York)
Loan #

## PROMISSORY NOTE

## Consolidated Note Exhibit C

**This Note amends and restates in their entirety, and given in substitution for, the notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same sate as this note.**

US $1,300,000.00

March 11, 2021

FOR VALUE RECEIVED, **51 East 126th Street LLC, a New York Limited Liability Company** ("**Borrower**") promises to pay to the order of NuBridge Commercial Lending LLC, a Delaware limited liability company ("**Lender**"), the principal amount of **one million three hundred thousand and 00/100 Dollars (US $1,300,000.00)** or so much thereof as shall be advanced by Lender pursuant to the terms set forth in the Loan Agreement (as defined below), (the "**Mortgage Loan**"), together with interest thereon accruing at the Interest Rate on the unpaid principal balance from the date the Advance proceeds are disbursed until fully paid in accordance with the terms hereof and of that certain Loan and Security Agreement dated as of the date hereof, by and between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**").

**1.    Defined Terms.**

Capitalized terms used and not specifically defined in this Promissory Note (this "**Note**") have the meanings given to such terms in the Loan Agreement.

**2.    Repayment; Loan Terms; Balloon Payment.**

Interest on all outstanding Advances shall accrue from the date such Advance is made until the date the Principal Amount is repaid in full as described below. Interest on all outstanding Advances shall be paid by Borrower on a monthly basis in arrears, on the first day of each month (each an "**Interest Payment Date**") commencing the month following the month in which the first Advance is funded, and shall accrue at a rate per annum equal to **9.500%** (the "**Interest Rate**") and shall be computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months.

Borrower shall pay to Lender the aggregate amount of all Advances funded (the "**Principal Amount**") plus all accrued interest and any and all other amounts due and unpaid hereunder upon the earliest to occur of (i) **March 1, 2022** (the "**Maturity Date**"), (ii) such date as Lender shall determine, in its sole discretion and in good faith, that there has been a material adverse change in the operations, business, properties or condition, financial or otherwise of Borrower or any Guarantor, (iii) acceleration upon the occurrence of an event of default or otherwise pursuant to Section 7 of the Loan Agreement and (iv) such date as Borrower elects to prepay in full the Principal Amount plus the accrued but unpaid interest hereon. Such earliest date referred to herein as the "**Final Payment Due Date.**"

Borrower agrees to pay the Principal Amount of the Mortgage Loan and interest on the Principal Amount of the Mortgage Loan from time to time outstanding at the Interest Rate or such other rate or rates and at the times specified in the Loan Agreement, together with all other amounts due to Lender under the Loan Documents. The amount and date of each Advance made shall be indicated on the Schedule of Advances attached hereto, provided, that the failure of the Lender to make any such recordation or notation

shall not affect the obligations of the Borrower to make a payment when due of any amount owing hereunder in respect of any Advance.

Borrower acknowledges and agrees that the entire Principal Amount is due on the Final Payment Due Date and that the Lender is under no obligation to refinance the Mortgage Loan at that time. Borrower will therefore be required to make payment out of other assets it may own, or will have to find a lender willing to lend Borrower the money at prevailing market rates, which may be considerably higher or lower than the interest rate on this Mortgage Loan. If Borrower refinance's this Mortgage Loan at maturity, it may have to pay some or all closing costs normally associated with a new loan, even if it obtains refinancing from the same lender.

**3.      Security.**

The Mortgage Loan evidenced by this Note, together with all other Indebtedness is secured by, among other things, the Security Instrument, the Loan Agreement and the other Loan Documents. All of the terms, covenants and conditions contained in the Loan Agreement, the Security Instrument and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

**4.      Acceleration.**

In accordance with the Loan Agreement, if an Event of Default has occurred and is continuing, the entire unpaid principal balance of the Mortgage Loan, any accrued and unpaid interest, including interest accruing at the Default Rate, the Exit Fee (if applicable), the Prepayment Premium (if applicable), and all other amounts payable under this Note, the Loan Agreement and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to Borrower, unless applicable law requires otherwise (and in such case, after satisfactory notice has been given).

**5.      Personal Liability.**

The provisions of Section 8 (Personal Liability) of the Loan Agreement are hereby incorporated by reference into this Note to the same extent and with the same force as if fully set forth herein.

**6.      Governing Law.**

This Note shall be governed in accordance with the terms and provisions of Section 10(a) of the Loan Agreement.

**7.      Waivers.**

Presentment, demand for payment, notice of nonpayment and dishonor, protest and notice of protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace and diligence in collecting the Indebtedness are waived by Borrower, for and on behalf of itself, Guarantor and Key Principal, and all endorsers and guarantors of this Note and all other third party obligors or others who may become liable for the payment of all or any part of the Indebtedness.

8.    **Commercial Purpose.**

Borrower represents that the Indebtedness is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise or activity, and not for agricultural, personal, family or household purposes.

9.    **Joint and Several (or Solidary, as applicable) Liability.**

(a)    If more than one Person executes this Note as Borrower, the obligations of such Person shall be joint and several (solidary instead for purposes of Louisiana law).

10.    **Notices.**

All Notices required or permitted to be given by Lender to Borrower pursuant to this Note shall be given in accordance with Section 10(e) of the Loan Agreement.

11.    **Time is of the Essence.**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Note, time is of the essence.

12.    **Loan Charges Savings Clause.**

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Mortgage Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents. Neither this Note, the Loan Agreement nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this Note and the other Loan Documents. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Mortgage Loan, or on acceleration of the maturity of the Mortgage Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation. Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Mortgage Loan without the payment of any prepayment premium (or, if the Mortgage Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of

the Mortgage Loan.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Mortgage Loan.

**13.**     **WAIVER OF TRIAL BY JURY.**

**TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**14.**     **Receipt of Loan Documents**.

Borrower acknowledges receipt of a copy of each of the Loan Documents.

**15.**     **Incorporation of Schedules**.

The schedules, if any, attached to this Note are incorporated fully into this Note by this reference and each constitutes a substantive part of this Note.

**ATTACHED SCHEDULES.**  The following Schedules are attached to this Note:

Schedule 1                           Schedule of Advances

**[Remainder of Page Intentionally Blank]**

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Note under seal (where applicable) or has caused this Note to be signed and delivered under seal (where applicable) by its duly authorized representative.  Where applicable law so provides, Borrower intends that this Note shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER**:
51 East 126th Street LLC

By: _____

Name: Vanessa Turner

Title:  Member

SCHEDULE 1
SCHEDULE OF ADVANCES

This Schedule of Advances to the Promissory Note dated **March 11, 2021** made by **51 East 126th Street LLC** as Borrower for the benefit of NuBridge Commercial Lending LLC, as Lender, evidences Advances made thereunder (and pursuant to the Loan Agreement of even date therewith), to the Borrower on the dates and in the principal amounts set forth below, and subject to the payments and prepayments of principal set forth below.

| Advance Date | Amount of Advance | Amount of Principal Paid or Prepaid |
|---|---|---|
| March 11, 2021 | $1,300,000.00 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**EXHIBIT D**
**TO**

Loan No:
Premises:     51 East 126th Street, New York, NY 10035

|  |  |
|---|---|
| Section: | 6 |
| Block: | 1751 |
| Lots: | 29 |
| Borough: | Manhattan |
| County: | New York |
| State: | New York |

## Consolidated Mortgage Exhibit D

## MORTGAGE,
## ASSIGNMENT OF LEASES AND RENTS,
## SECURITY AGREEMENT
## AND FIXTURE FILING

## (NEW YORK)

____ THIS SECURITY INSTRUMENT COVERS REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY A ONE OR TWO FAMILY DWELLING ONLY

____ THIS SECURITY INSTRUMENT COVERS REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLING UNITS, EACH HAVING THEIR OWN COOKING FACILITIES

__X__ THIS SECURITY INSTRUMENT COVERS REAL PROPERTY THAT IS NOT IMPROVED AS DESCRIBED ABOVE

Prepared by, and after recording
return to:
General Counsel
NuBridge Commercial Lending LLC
21680 Gateway Center Drive, #230
Diamond Bar, CA 91765

## MORTGAGE,
## ASSIGNMENT OF LEASES AND RENTS,
## SECURITY AGREEMENT
## AND FIXTURE FILING

This MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Security Instrument**") dated as of **March 11, 2021**, is executed by **51 East 126th Street LLC, a New York Limited Liability Company**, whose address is **401 First Ave. 5D-4, New York, NY 10010 (the "Borrower"**), to and for the benefit of NuBridge Commercial Lending LLC, a limited liability company organized and existing under the laws of Delaware, whose address is 21680 Gateway Center Drive, #230, Diamond Bar, CA 91765, as mortgagee ("**Lender**").

Borrower, in consideration of (i) the loan in the original principal amount of **$1,300,000.00** (the "**Mortgage Loan**") evidenced by that certain Promissory Note dated as of the date of this Security Instrument, executed by Borrower and made payable to the order of Lender (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Note**"), and (ii) that certain Loan and Security Agreement dated as of the date of this Security Instrument, executed by and between Borrower and Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), and to secure to Lender the repayment of the Indebtedness (as defined in this Security Instrument), and all renewals, extensions and modifications thereof, and the performance of the covenants and agreements of Borrower contained in the Loan Documents (as defined in the Loan Agreement), excluding the Environmental Indemnity Agreement (as defined in this Security Instrument), irrevocably and unconditionally mortgages, grants, assigns, remises, releases, warrants and conveys to and for the benefit of Lender the Mortgaged Property (as defined in this Security Instrument), including the real property located in the County of **New York**, State of New York, and described in Exhibit A attached to this Security Instrument and incorporated by reference (the "**Land**"), to have and to hold such Mortgaged Property unto Lender and Lender's successors and assigns, forever; Borrower hereby releasing, relinquishing and waiving, to the fullest extent allowed by law, all rights and benefits, if any, under and by virtue of the homestead exemption laws of the Property Jurisdiction (as defined in this Security Instrument), if applicable.

Notwithstanding anything to the contrary contained in this Security Instrument, the maximum principal amount of indebtedness secured hereby as of the date hereof, or which may be secured hereby at any time hereafter, is **$1,300,000.00**, plus amounts expended by Lender after a default by Borrower to the extent that any such amounts constitute payment of (a) Impositions and insurance premiums relating to the Mortgaged Property, and (b) expenses incurred by Lender in upholding or sustaining the lien of this Security Instrument, including legal fees incurred by Lender to enforce or defend its right under this Security Instrument or the lien created hereby, or (c) any amount, cost or charge to which Lender becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority; and all such amounts

or costs, together with interest thereon, shall be added to the indebtedness secured hereby and shall be secured by this Security Instrument.

Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to mortgage, grant, assign, remise, release, warrant and convey the Mortgaged Property, and that the Mortgaged Property is not encumbered by any Lien (as defined in this Security Instrument) other than Permitted Encumbrances (as defined in this Security Instrument).  Borrower covenants that Borrower will warrant and defend the title to the Mortgaged Property against all claims and demands other than Permitted Encumbrances.

Borrower and Lender, by its acceptance hereof, each covenants and agrees as follows:

**1.      Defined Terms.**

Capitalized terms used and not specifically defined herein have the meanings given to such terms in the Loan Agreement.  All terms used and not specifically defined herein, but which are otherwise defined by the UCC, shall have the meanings assigned to them by the UCC.  The following terms, when used in this Security Instrument, shall have the following meanings:

"**Condemnation Action**" means any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect.

"**Enforcement Costs**" means all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

"**Environmental Indemnity Agreement**" means that certain Environmental Indemnity Agreement dated as of the date of this Security Instrument, executed by Borrower to and for the benefit of Lender, as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time.

"**Environmental Laws**" has the meaning set forth in the Environmental Indemnity Agreement.

"**Event of Default**" has the meaning set forth in the Loan Agreement.

"**Fixtures**" means all Goods that are so attached or affixed to the Land or the Improvements as to constitute a fixture under the laws of the Property Jurisdiction.

**"Goods"** means all of Borrower's present and hereafter acquired right, title and interest in all goods which are used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements, including inventory; furniture; furnishings; machinery, equipment, engines, boilers, incinerators, and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring, and conduits used in connection with radio, television, security, fire prevention, or fire detection, or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers, and other appliances; light fixtures, awnings, storm windows, and storm doors; pictures, screens, blinds, shades, curtains, and curtain rods; mirrors, cabinets, paneling, rugs, and floor and wall coverings; fences, trees, and plants; swimming pools; exercise equipment; supplies; tools; books and records (whether in written or electronic form); websites, URLs, blogs, and social network pages; computer equipment (hardware and software); and other tangible personal property which is used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements.

**"Imposition Deposits"** means deposits in an amount sufficient to accumulate with Lender the entire sum required to pay the Impositions when due.

**"Impositions"** means

(a)     any water and sewer charges which, if not paid, may result in a lien on all or any part of the Mortgaged Property;

(b)     the premiums for fire and other casualty insurance, liability insurance, rent loss insurance and such other insurance as Lender may require under the Loan Agreement;

(c)     Taxes; and

(d)     amounts for other charges and expenses assessed against the Mortgaged Property which Lender at any time reasonably deems necessary to protect the Mortgaged Property, to prevent the imposition of liens on the Mortgaged Property, or otherwise to protect Lender's interests, all as reasonably determined from time to time by Lender.

**"Improvements"** means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements, facilities, and additions and other construction on the Land.

**"Indebtedness"** means the principal of, interest on, and all other amounts due at any time under the Note, the Loan Agreement, this Security Instrument or any other Loan Document (other than the Environmental Indemnity Agreement and Guaranty), including Prepayment Premiums, late charges, interest charged at the Default Rate, and accrued interest as provided in the Loan

Agreement and this Security Instrument, advances, costs and expenses to perform the obligations of Borrower or to protect the Mortgaged Property or the security of this Security Instrument, all other monetary obligations of Borrower under the Loan Documents (other than the Environmental Indemnity Agreement), including amounts due as a result of any indemnification obligations, and any Enforcement Costs.

"**Land**" means the real property described in <u>Exhibit A</u>.

"**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property (including proprietary leases or occupancy agreements if Borrower is a cooperative housing corporation), and all modifications, extensions or renewals thereof.

"**Lien**" means any claim or charge against property for payment of a debt or an amount owed for services rendered, including any mortgage, deed of trust, deed to secure debt, security interest, tax lien, any materialman's or mechanic's lien, or any lien of a Governmental Authority, including any lien in connection with the payment of utilities, or any other encumbrance.

"**Mortgaged Property**" means all of Borrower's present and hereafter acquired right, title and interest, if any, in and to all of the following:

      (a)     the Land;

      (b)     the Improvements;

      (c)     the Personalty;

      (d)     current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefitting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

      (e)     insurance policies relating to the Mortgaged Property (and any unearned premiums) and all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirements;

      (f)     awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property, including any awards or settlements resulting from (1) Condemnation Actions, (2) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation Action, or (3) the total or partial taking of the Land,

the Improvements, the Personalty, or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(g)      contracts, options and other agreements for the sale of the Land, the Improvements, the Personalty, or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(h)      Leases and Lease guaranties, letters of credit and any other supporting obligation for any of the Leases given in connection with any of the Leases, and all Rents;

(i)      earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Mortgage Loan and, if Borrower is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

(j)      Imposition Deposits;

(k)      refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Security Instrument is dated);

(l)      tenant security deposits;

(m)      names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property;

(n)      Collateral Accounts and all Collateral Account Funds;

(o)      products, and all cash and non-cash proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; and

(p)      all of Borrower's right, title and interest in the oil, gas, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under and on the Mortgaged Property and other oil, gas and mineral interests with which any of the foregoing interests or estates are pooled or unitized.

"**Permitted Encumbrance**" means only the easements, restrictions and other matters listed in a schedule of exceptions to coverage in the Title Policy and Taxes for the current tax year that are not yet due and payable.

"**Personalty**" means all of Borrower's present and hereafter acquired right, title and interest in all Goods, accounts, choses of action, chattel paper, documents, general intangibles (including Software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all

telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land.

"**Prepayment Premium**" has the meaning set forth in the Loan Agreement.

"**Property Jurisdiction**" means the jurisdiction in which the Land is located.

"**Rents**" means all rents (whether from residential or non-residential space), revenues and other income from the Land or the Improvements, including subsidy payments received from any sources, including payments under any "Housing Assistance Payments Contract" or other rental subsidy agreement (if any), parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Mortgaged Property, whether now due, past due, or to become due, and tenant security deposits.

"**Software**" means a computer program and any supporting information provided in connection with a transaction relating to the program.  The term does not include any computer program that is included in the definition of Goods.

"**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, may become a lien, on the Land or the Improvements or any taxes upon any Loan Document.

"**Title Policy**" has the meaning set forth in the Loan Agreement.

"**UCC**" means the Uniform Commercial Code in effect in the Property Jurisdiction, as amended from time to time.

"**UCC Collateral**" means any or all of that portion of the Mortgaged Property in which a security interest may be granted under the UCC and in which Borrower has any present or hereafter acquired right, title or interest.

2.    **Security Agreement; Fixture Filing.**

(a)    To secure to Lender, the repayment of the Indebtedness, and all renewals, extensions and modifications thereof, and the performance of the covenants and agreements of Borrower contained in the Loan Documents, Borrower hereby pledges, assigns, and grants to Lender a continuing security interest in the UCC Collateral.  This Security Instrument constitutes a security agreement and a financing statement under the UCC.  This Security Instrument also

constitutes a financing statement pursuant to the terms of the UCC with respect to any part of the Mortgaged Property that is or may become a Fixture under applicable law, and will be recorded as a "fixture filing" in accordance with the UCC. Borrower hereby authorizes Lender to file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest without the signature of Borrower. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the UCC or otherwise provided at law or in equity, in addition to all remedies provided by this Security Instrument and in any Loan Document. Lender may exercise any or all of its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability or validity of Lender's other remedies. For purposes of the UCC, the debtor is Borrower and the secured party is Lender. The name and address of the debtor and secured party are set forth after Borrower's signature below which are the addresses from which information on the security interest may be obtained.

(b)     Borrower represents and warrants that: (1) Borrower maintains its chief executive office at the location set forth after Borrower's signature below, and Borrower will notify Lender in writing of any change in its chief executive office within five (5) days of such change; (2) Borrower is the record owner of the Mortgaged Property; (3) Borrower's state of incorporation, organization, or formation, if applicable, is as set forth on Page 2 of this Security Instrument; (4) Borrower's exact legal name is as set forth on Page 2 of this Security Instrument; (5) Borrower's organizational identification number, if applicable, is as set forth after Borrower's signature below; (6) Borrower is the owner of the UCC Collateral subject to no liens, charges or encumbrances other than the lien hereof; (7) except as expressly provided in the Loan Agreement, the UCC Collateral will not be removed from the Mortgaged Property without the consent of Lender; and (8) no financing statement covering any of the UCC Collateral or any proceeds thereof is on file in any public office except pursuant hereto.

(c)     All property of every kind acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further conveyance or assignment become subject to the lien and security interest created by this Security Instrument. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds of trust, mortgages, deeds to secure debt, security agreements, financing statements, assignments and assurances as Lender shall require for accomplishing the purposes of this Security Instrument and to comply with the rerecording requirements of the UCC.

3.     **Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession.**

(a)     As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the

assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Only for purposes of giving effect to these absolute assignments of Leases and Rents, and for no other purpose, the Leases and Rents shall not be deemed to be a part of the Mortgaged Property. However, if these present, absolute and unconditional assignments of Leases and Rents are not enforceable by their terms under the laws of the Property Jurisdiction, then each of the Leases and Rents shall be included as part of the Mortgaged Property, and it is the intention of Borrower, in such circumstance, that this Security Instrument create and perfect a lien on each of the Leases and Rents in favor of Lender, which liens shall be effective as of the date of this Security Instrument.

(b)     Until an Event of Default has occurred and is continuing, but subject to the limitations set forth in the Loan Documents, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, subject to the limitations set forth in the Loan Documents), and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay the Monthly Debt Service Payments and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities and Impositions (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing (and no event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing), the Rents remaining after application pursuant to the preceding sentence may be retained and distributed by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Security Instrument.

(c)     If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, the revocable license granted to Borrower pursuant to Section 3(b) shall automatically terminate, and Lender shall immediately have all rights, powers and authority granted to Borrower under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid. During the continuance of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender, and Borrower shall, upon Borrower's receipt of any Rents from any sources, pay the total amount of such receipts to Lender. Although the foregoing rights of Lender are self-effecting, at any time during the continuance of an Event of Default, Lender may make demand for all Rents, and Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender. No tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts that are actually paid to Lender in response to such a notice. Any such

notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.

(d)    If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower, and even in the absence of waste, enter upon, take and maintain full control of the Mortgaged Property, and may exclude Borrower and its agents and employees therefrom, in order to perform all acts that Lender, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents (including through use of a lockbox, at Lender's election), the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing this assignment of Rents, protecting the Mortgaged Property or the security of this Security Instrument and the Mortgage Loan, or for such other purposes as Lender in its discretion may deem necessary or desirable.

(e)    Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver. Lender or the receiver, as applicable, shall be entitled to receive a reasonable fee for managing the Mortgaged Property and such fee shall become an additional part of the Indebtedness. Immediately upon appointment of a receiver or Lender's entry upon and taking possession and control of the Mortgaged Property, possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable. If Lender or receiver takes possession and control of the Mortgaged Property, Lender or receiver may exclude Borrower and its representatives from the Mortgaged Property.

(f)    The acceptance by Lender of the assignments of the Leases and Rents pursuant to this Section 3 shall not at any time or in any event obligate Lender to take any action under any Loan Document or to expend any money or to incur any expense. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in, on or about the Mortgaged Property. Prior to Lender's actual entry upon and taking possession and control of the Land and Improvements, Lender shall not be:

(1)    obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease);

(2)     obligated to appear in or defend any action or proceeding relating to any Lease or the Mortgaged Property; or

(3)     responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property.

The execution of this Security Instrument shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking possession and control by Lender of the Land and Improvements.

(g)     Lender shall be liable to account only to Borrower and only for Rents actually received by Lender. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law, provided that Lender shall not be released from liability that occurs as a result of Lender's gross negligence or willful misconduct as determined by a court of competent jurisdiction pursuant to a final, non-appealable court order. If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall be added to, and become a part of, the principal balance of the Indebtedness, be immediately due and payable, and bear interest at the Default Rate from the date of disbursement until fully paid. Any entering upon and taking control of the Mortgaged Property by Lender or the receiver, and any application of Rents as provided in this Security Instrument, shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Security Instrument or any Loan Document.

4.      **Protection of Lender∞s Security.**

If Borrower fails to perform any of its obligations under this Security Instrument or any other Loan Document, or any action or proceeding is commenced that purports to affect the Mortgaged Property, Lender's security, rights or interests under this Security Instrument or any Loan Document (including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Environmental Laws, fraudulent conveyance or reorganizations or proceedings involving a debtor or decedent), Lender may, at its option, make such appearances, disburse or pay such sums and take such actions, whether before or after an Event of Default or whether directly or to any receiver for the Mortgaged Property, as Lender reasonably deems necessary to perform such obligations of Borrower and to protect the Mortgaged Property or Lender's security, rights or interests in the Mortgaged Property or the Mortgage Loan, including:

(a)     paying fees and out-of-pocket expenses of attorneys, accountants, inspectors and consultants;

(a)     entering upon the Mortgaged Property to make repairs or secure the Mortgaged Property;

(b)    obtaining (or force-placing) the insurance required by the Loan Documents; and

(c)    paying any amounts required under any of the Loan Documents that Borrower has failed to pay.

Any amounts so disbursed or paid by Lender shall be added to, and become part of, the principal balance of the Indebtedness, be immediately due and payable and bear interest at the Default Rate from the date of disbursement until fully paid. The provisions of this Section 4 shall not be deemed to obligate or require Lender to incur any expense or take any action.

## 5.    Default; Acceleration; Remedies.

(a)    If an Event of Default has occurred and is continuing, Lender, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits at law or in equity or any other appropriate proceeding or remedy (1) to enforce payment of the Mortgage Loan; (2) to foreclose this Security Instrument judicially or non-judicially; (3) to enforce or exercise any right under any Loan Document; and (4) to pursue any one (1) or more other remedies provided in this Security Instrument or in any other Loan Document or otherwise afforded by applicable law. Each right and remedy provided in this Security Instrument or any other Loan Document is distinct from all other rights or remedies under this Security Instrument or any other Loan Document or otherwise afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. Borrower has the right to bring an action to assert the nonexistence of an Event of Default or any other defense of Borrower to acceleration and sale.

(b)    In connection with any sale made under or by virtue of this Security Instrument, the whole of the Mortgaged Property may be sold in one (1) parcel as an entirety or in separate lots or parcels at the same or different times, all as Lender may determine in its sole discretion. Lender shall have the right to become the purchaser at any such sale. In the event of any such sale, the outstanding principal amount of the Mortgage Loan and the other Indebtedness, if not previously due, shall be and become immediately due and payable without demand or notice of any kind. If the Mortgaged Property is sold for an amount less than the amount outstanding under the Indebtedness, the deficiency shall be determined by the purchase price at the sale or sales. To the extent not prohibited by applicable law, Borrower waives all rights, claims, and defenses with respect to Lender's ability to obtain a deficiency judgment.

(c)    Borrower acknowledges and agrees that the proceeds of any sale shall be applied as determined by Lender unless otherwise required by applicable law.

(d)    In connection with the exercise of Lender's rights and remedies under this Security Instrument and any other Loan Document, there shall be allowed and included as Indebtedness: (1) all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication

costs; (2) all expenses of any environmental site assessments, environmental audits, environmental remediation costs, appraisals, surveys, engineering studies, wetlands delineations, flood plain studies, and any other similar testing or investigation deemed necessary or advisable by Lender incurred in preparation for, contemplation of or in connection with the exercise of Lender's rights and remedies under the Loan Documents; and (3) all additional advances made pursuant to Section 8303 of the Civil Practice Law and Rules of the State of New York and costs (which may be reasonably estimated as to items to be expended in connection with the exercise of Lender's rights and remedies under the Loan Documents) of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section 5, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, any Foreclosure Event, or in preparation of the commencement or defense of any proceedings or threatened suit or proceeding, or otherwise in dealing specifically therewith, shall be additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

(e)    Any action taken by Lender pursuant to the provisions of this Section 5 shall comply with the laws of the Property Jurisdiction.  Such applicable laws shall take precedence over the provisions of this Section 5, but shall not invalidate or render unenforceable any other provision of any Loan Document that can be construed in a manner consistent with any applicable law. If any provision of this Security Instrument shall grant to Lender (including Lender acting as a mortgagee-in-possession), or a receiver appointed pursuant to the provisions of this Security Instrument any powers, rights or remedies prior to, upon, during the continuance of or following an Event of Default that are more limited than the powers, rights, or remedies that would otherwise be vested in such party under any applicable law in the absence of said provision, such party shall be vested with the powers, rights, and remedies granted in such applicable law to the full extent permitted by law.  The rights and remedies of Lender specified in this Security Instrument shall be in addition to Lender's rights and remedies under New York law, specifically including Section 254 of the Real Property Law.  In the event of any conflict between the provision of this Security Instrument and the provisions of Section 254 of the Real Property Law, the provisions of this Security Instrument shall control.

6.    **Waiver of Statute of Limitations and Marshaling.**

Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce any Loan Document.  Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order

in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Security Instrument and/or any other Loan Document or by applicable law.  Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies.  Borrower, for itself and all who may claim by, through or under it, and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Security Instrument, waives any and all right to require the marshaling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels (at the same time or different times) in connection with the exercise of any of the remedies provided in this Security Instrument or any other Loan Document, or afforded by applicable law.

**7.     Waiver of Redemption; Rights of Tenants.**

(a)     Borrower hereby covenants and agrees that it will not at any time apply for, insist upon, plead, avail itself, or in any manner claim or take any advantage of, any appraisement, stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter enacted or in force in order to prevent or hinder the enforcement or foreclosure of this Security Instrument.  Without limiting the foregoing:

(1)     Borrower, for itself and all Persons who may claim by, through or under Borrower, hereby expressly waives any so-called "Moratorium Law" and any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Security Instrument, it being the intent hereof that any and all such "Moratorium Laws", and all rights of reinstatement and redemption of Borrower and of all other Persons claiming by, through or under Borrower are and shall be deemed to be hereby waived to the fullest extent permitted by the laws of the Property Jurisdiction;

(2)     Borrower shall not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power remedy herein or otherwise granted or delegated to Lender but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

(3)     if Borrower is a trust, Borrower represents that the provisions of this Section 7 (including the waiver of reinstatement and redemption rights) were made at the express direction of Borrower's beneficiaries and the persons having the power of direction over Borrower, and are made on behalf of the trust estate of Borrower and all beneficiaries of Borrower, as well as all other persons mentioned above.

(b)     Lender shall have the right to foreclose subject to the rights of any tenant or tenants of the Mortgaged Property having an interest in the Mortgaged Property prior to that of Lender. The failure to join any such tenant or tenants of the Mortgaged Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Borrower as a defense in any civil action instituted to collect the Indebtedness, or any part thereof or any deficiency remaining unpaid after foreclosure and sale

of the Mortgaged Property, any statute or rule of law at any time existing to the contrary notwithstanding.

8.    **Notice.**

(a)    All notices under this Security Instrument shall be:

(1)    in writing, and shall be (A) delivered, in person, (B) mailed, postage prepaid, either by registered or certified delivery, return receipt requested, or (C) sent by overnight express courier;

(2)    addressed to the intended recipient at its respective address set forth at the end of this Security Instrument; and

(3)    deemed given on the earlier to occur of:

(A)    the date when the notice is received by the addressee; or

(B)    if the recipient refuses or rejects delivery, the date on which the notice is so refused or rejected, as conclusively established by the records of the United States Postal Service or such express courier service.

(b)    Any party to this Security Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 8.

(c)    Any required notice under this Security Instrument which does not specify how notices are to be given shall be given in accordance with this Section 8.

9.    **Mortgagee-in-Possession.**

Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred in this Security Instrument shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

10.    **Satisfaction of Debt.**

Upon payment of the Indebtedness, Lender shall (a) discharge this Security Instrument, or (b) if at such time, industry practice is to assign rather than discharge a mortgage, upon Borrower's written request, Lender shall assign Lender's interest in this Security Instrument, together with the Note or notes secured by this Security Instrument, to a person or entity specified by Borrower in writing to Lender.  Lender shall make any such assignment without recourse to Lender, using such form of assignment as is acceptable to Lender.  If any original note is lost or destroyed, Lender shall provide a lost note affidavit, which shall provide that Lender shall have no liability for such loss or destruction.  Borrower shall pay Lender's reasonable costs incurred in discharging or

assigning this Security Instrument, as applicable. Borrower further agrees to hold harmless and indemnify Lender for and against any loss, cost, damage or liability incurred by Lender in connection with any such assignment.

**11.    New York State Specific Provisions.**

(a)    Borrower shall receive advances under this Security Instrument subject to the trust fund provisions of Section 13 of the Lien Law of the State of New York and shall hold the right to receive the same as a trust fund to be applied first for the purpose of paying the cost of the improvement and shall apply the same first to the payment of the cost of the improvement before using any part for any other purpose.

(b)    In connection with any non-residential Leases having an unexpired term of five (5) years or longer from the date of this Security Instrument, Lender shall have, against the lessee under each Lease, all the rights set forth in Section 291-f of the Real Property Law of the State of New York, as amended from time to time. Borrower shall promptly deliver the written notices described in said Section 291-f to all present lessees under the non-residential Leases.

(c)    Borrower hereby covenants and agrees with Lender that, except as otherwise set forth in the Loan Agreement, without the written consent of Lender first had and obtained, Borrower will not accept any surrender, cancellation, abridgment or modification of any of the terms, covenants and conditions of any Leases, and will not accept prepayments of installments of rent to become due thereunder for more than one (1) month in advance, except to the extent that such cancellation, abridgment, modification or prepayment is presently expressly permitted to a tenant under the provisions of its respective Lease.

(d)    This Security Instrument is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby. Borrower shall (unless such notice is contained in such tenant's Leases) deliver notice of this Security Instrument in form and substance acceptable to Lender, to all present and future holders of any interest in any Lease, by assignment or otherwise, and shall take such other action as may now or hereafter be reasonably required to afford Lender the full protections and benefits of Section 291-f.

(e)    Borrower represents that this Security Instrument does not encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having its own separate cooking facilities.

(f)    If, by reason of the additional sums that may become secured by the lien of this Security Instrument pursuant to the terms hereof, a court or other governmental authority having jurisdiction at any time shall determine that this Security Instrument falls within the ambit of Section 256 of the Tax Law of the State of New York, then Lender reserves the right, in its discretion, to elect not to have such additional sums secured by this Security Instrument and thereby reduce the amount of the debt secured hereby to a definite amount equal to the principal amount of the Note, interest thereon at the rate provided in the Note, plus any disbursements made

to protect the security of this Security Instrument, with interest on such disbursements at the Default Rate, plus any such other sums as by statute or judicial interpretation now or hereafter may be permitted to be secured by the lien of a mortgage without incurring any additional mortgage recording tax. Any election by Lender to so reduce the indebtedness secured by this Security Instrument shall in no event be deemed a release, waiver or discharge by Lender of Borrower's obligation to pay or reimburse Lender for such sums and such obligation shall continue unimpaired and shall be recourse obligations of Borrower and any Guarantor, regardless of any other provisions set forth in this Security Instrument, the Note or any guaranty of the Indebtedness secured hereby that may limit recourse against Borrower or any other person.

(g)     Any sums, including any prepayment premiums, late charges or liquidated damages, that may become due and payable pursuant to the terms of the Note and/or this Security Instrument and that are in the nature of interest (i) shall for the purpose of determining the amount of mortgage recording tax due and payable on this Security Instrument, be considered as additional interest, whether or not so denominated, (ii) shall be secured by the lien of this Security Instrument to the fullest extent possible without causing this Security Instrument to be covered by Section 256 of the Tax Law of the State of New York, and (iii) shall not be deemed principal and shall not accrue any interest.

(h)     The clauses and covenants contained in this Security Instrument that are construed by Section 254 of the New York Real Property Law shall be construed as provided in those sections. The additional clauses and covenants contained in this Security Instrument shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 and shall not impair, modify, alter or defeat such rights, notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254. The rights of Lender arising under the clauses and covenants contained in this Security Instrument shall be separate, distinct and cumulative and none of them shall be in exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding.   In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Security Instrument, the provisions of this Security Instrument shall prevail.

(i)     Borrower and the Mortgaged Property are in compliance with the material terms and provisions of Section 421-a of the Real Property Tax Law of the State of New York and all other rent control and rent stabilization laws, statutes, ordinances, rules regulations or requirements (collectively, the "**Rent Laws**:) applicable to the Mortgaged Property or any portion thereof. There are no current proceedings pending before the New York State Department of Housing and Community Renewal in which a tenant has alleged an overcharge of rent, a diminution of services or other grievance. The apartment units contained in the Improvements which are currently subject to certain Rent Laws will no longer be subject to Rent Laws or any kind once such units are vacated by the current tenants and any person having the right to succeed any such tenants.

12.    **Governing Law; Consent to Jurisdiction and Venue.**

This Security Instrument shall be governed by the laws of the Property Jurisdiction without giving effect to any choice of law provisions thereof that would result in the application of the laws of another jurisdiction.  Borrower agrees that any controversy arising under or in relation to this Security Instrument shall be litigated exclusively in the Property Jurisdiction.  The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies that arise under or in relation to any security for the Indebtedness.  Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

13.    **Miscellaneous Provisions.**

(a)    This Security Instrument shall bind, and the rights granted by this Security Instrument shall benefit, the successors and assigns of Lender.  This Security Instrument shall bind, and the obligations granted by this Security Instrument shall inure to, any permitted successors and assigns of Borrower under the Loan Agreement.  If more than one (1) person or entity signs this Security Instrument as Borrower, the obligations of such persons and entities shall be joint and several.  The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Security Instrument shall create any other relationship between Lender and Borrower.  No creditor of any party to this Security Instrument and no other person shall be a third party beneficiary of this Security Instrument or any other Loan Document.

(b)    The invalidity or unenforceability of any provision of this Security Instrument or any other Loan Document shall not affect the validity or enforceability of any other provision of this Security Instrument or of any other Loan Document, all of which shall remain in full force and effect.  This Security Instrument contains the complete and entire agreement among the parties as to the matters covered, rights granted and the obligations assumed in this Security Instrument.  This Security Instrument may not be amended or modified except by written agreement signed by the parties hereto.

(c)    The following rules of construction shall apply to this Security Instrument:

(1)    The captions and headings of the sections of this Security Instrument are for convenience only and shall be disregarded in construing this Security Instrument.

(2)    Any reference in this Security Instrument to an "Exhibit" or "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an exhibit or schedule attached to this Security Instrument or to a Section or Article of this Security Instrument.

(3)    Any reference in this Security Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(4)     Use of the singular in this Security Instrument includes the plural and use of the plural includes the singular.

(5)     As used in this Security Instrument, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(6)     Whenever Borrower's knowledge is implicated in this Security Instrument or the phrase "to Borrower's knowledge" or a similar phrase is used in this Security Instrument, Borrower's knowledge or such phrase(s) shall be interpreted to mean to the best of Borrower's knowledge after reasonable and diligent inquiry and investigation.

(7)     Unless otherwise provided in this Security Instrument, if Lender's approval, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(8)     All references in this Security Instrument to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(9)     "Lender may" shall mean at Lender's discretion, but shall not be an obligation.

**14.     Time is of the Essence.**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Security Instrument and the other Loan Documents, time is of the essence.

**15.     WAIVER OF TRIAL BY JURY.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS SECURITY INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH OF BORROWER AND LENDER, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**ATTACHED EXHIBITS.**   The following Exhibits are attached to this Security Instrument and incorporated fully herein by reference:

Exhibit A                              Description of the Land

**[Remainder of Page Intentionally Blank]**

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Security Instrument under seal (where applicable) or has caused this Security Instrument to be signed and delivered by its duly authorized representative under seal (where applicable).   Where applicable law so provides, Borrower intends that this Security Instrument shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

**51 East 126th Street LLC**, a New York Limited Liabilty Company

By: _____

Name: Vanessa Turner

Title:   Member

The name, chief executive office and organizational identification number of Borrower (as Debtor under any applicable Uniform Commercial Code) are:

Debtor Name/Record Owner: **51 East 126th Street LLC**

Debtor Chief Executive Office Address:

401 First Ave. 5D-4

New York, NY 10010

_____

The name and chief executive office of Lender (as Secured Party) are:

Secured Party Name: NuBridge Commercial Lending LLC

Secured Party Chief Executive Office Address:

21680 Gateway Center Drive, #230

Diamond Bar, CA 91765

_____

State of New York )
            ) ss.:
County of _____ Kings _____ )

On the _11_ day of _March_ in the year _2021_ before me, the undersigned, a Notary Public in and for said State, personally appeared _VANESSA TURNER_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public
Printed Name: _____
My Commission Expires:

RICHARD C. LORENZO
NOTARY PUBLIC, State of New York
No. 01LO4685470
Qualified in Richmond County
Commission Expires: May 31, 20 22

_____

Security Instrument – New York (2012)
51 East 126th Street LLC

Page 22 of 23
Loan #

## EXHIBIT A

SECTION: 6 BLOCK: 1751 LOT: 29 ON THE TAX MAP OF NEW YORK COUNTY

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of 126th Street, distant 170 feet Westerly from the corner formed by the intersection of the Northerly side of 126th Street with the Westerly side of Park Avenue;

RUNNING THENCE Northerly parallel with Park Avenue and part of the way through a party wall, 99 feet 11 inches to the center line of the block;

THENCE Westerly along the said center line of the block, 25 feet;

THENCE Southerly parallel with Park Avenue and part of the way through another party wall, 99 feet 11 inches to the Northerly side of 126th Street; and

THENCE Easterly along the Northerly side of 126th Street, 25 feet to the point or place of BEGINNING.

FOR CONVEYANCING ONLY, IF INTENDED TO BE CONVEYED: TOGETHER WITH ALL RIGHT, TITLE AND INTEREST OF, IN AND TO ANY STREETS, ROADS, OR AVENUES ABUTTING THE ABOVE DESCRIBED PREMISES, TO THE CENTER LINE THEREOF.

For informational purposes only: 51 East 126th Street, New York, NY 10035

Loan #:
Title #: RAC6786-M
Title Co.: Ridge Abstract Corp.

## AFFIDAVIT UNDER SECTION 255 TAX LAW

STATE OF NEW YORK)

COUNTY of Nassau )        ss:

~~John V. Mincone~~  William V. Armentano  BEING DULY SWORN, DEPOSES AND SAYS

1. That he is the attorney for NuBridge Commerical Lending LLC
New York, the owner and holder of the hereinafter described mortgage, and is familiar with the facts and circumstances set forth herein.

2.  That the instrument herewith offered for the recording is identified as follows:

> a) Type of instrument: Consolidation Mortgage
> b) Date of instrument: **March 11, 2021**
> c) Parties
>    Mortgagee: **NuBridge Commerical Lending LLC**
>    Mortgagor(s): **51 EAST 126TH STREET LLC**
>
> d) Amount of Consolidation Mortgage: **$1,300,000.00**

3.  That the mortgage to which the above instrument is supplemental is identified as follows:

#1    a) Dated: **4/26/2016**
     b) Parties

> Mortgagee:
> Mortgagor(s): **51 EAST 126TH STREET LLC**

     c) Recording Office: County Clerks Office
     d) County of recording:
     e) Date of Recording: **5/13/2016**
     f) Recording Liber/reel: **2016000166209**
     g) Recording Page:
     h) Mortgage Tax Paid: **$10,250.00**
     i) Present unpaid principal balance: **$817,228.37**
     **See Exhibit**

#2    a) Dated: **10/16/2016**
     b) Parties

> Mortgagor(s): **51 EAST 126TH STREET LLC**
> Mortgagee:

     c) Recording Office: County Clerks Office
     d) County of recording:
     e) Date of Recording: **10/20/2016**
     f) Recording Liber/reel: **2016000370495**
     g) Recording Page:
     h) Mortgage Tax Paid: **$15,510.00**
     i) Present unpaid principal balance:
     **See Exhibit**

4.   That said instrument herewith offered for recording does not create any new lien or indebtedness other than the amount of the original mortgage and/or amount due thereon, that no reloans or readvances have been made under said mortgage or the instrument herewith offered for the recording except the addition of **$482,771.63** secured by the said instrument herewith offered for recording upon which the mortgage tax due thereon is being paid herewith.

5.   That exemption from further tax is claimed under Section 255 of the Tax Law as to the said instrument herewith offered for recording.

_____
Mincone & Mincone P.C.

Sworn to before me: March 11, 2021

_____
Notary Public

RICHARD C. LORENZO
NOTARY PUBLIC, State of New York
No. 01LO4685470
Qualified in Richmond County
Commission Expires: May 31, 20__

EXHIBIT A
(List of Mortgages, Notes and Agreements)

(1)    The Mortgage given by 51 EAST 126TH STREET LLC and dated March 11, 2021 in favor of NuBridge Commerical Lending LLC securing the original principal amount of $482,771.63. This Mortgage [is on a Fannie Mae/Freddie Mac Security Instrument] and will be recorded together with this Agreement in the County of , State of New York,. At this date, the unpaid principal balance secured by this Mortgage is $482,771.63. This Mortgage secures a Note dated March 11, 2021.

(2)    The Mortgage given by 51 EAST 126TH STREET LLC dated April 26, 2016 in favor of 126th Street Funding LLC, securing the original principal amount of $499,999.00, recorded May 13, 2016 in CRFN 2016000166209 , in the County of , State of New York. This Mortgage secures a Note dated April 26, 2016. At this date, the unpaid principal balance secured by this Mortgage is $817,228.37.

This Mortgage was assigned by 126th Street Funding LLC to 126th Street Funding LLC, by assignment dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370494 , in the County of , State of New York.

A deed made by  to 51 EAST 126TH STREET LLC dated March 11, 2021 and intended to be recorded simultaneously herewith  in the County of , State of NY and subject to the terms of the above mentioned Mortgage.

(3)    The Mortgage given by 51 EAST 126TH STREET LLC dated October 16, 2016 in favor of Readycap Commerical, LLC, securing the original principal amount of $385,001.00, recorded October 20, 2016 in CRFN 2016000370495 . This Mortgage secures a Note dated October 16, 2016.

A Consolidation, Extension and Modification Agreement given by 51 EAST 126TH STREET LLC to Readycap Commerical, LLC dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370496 , in the County of , State of New York, consolidates the above Mortgages to form a single lien in the amount of $885,000.00.

This Mortgage was assigned by Readycap Commerical, LLC to Federal Home Loan Mortgage Corporation, by assignment dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370497 , in the County of , State of New York.

This Mortgage was assigned by Federal Home Loan Mortgage Corporation to Deutsche Bank National Trust Company, by assignment dated June 27, 2017, recorded July 3, 2017 in CRFN 2017000243849 , in the County of , State of New York.

This Mortgage was assigned by Deutsche Bank National Trust Company to NuBridge Commercial Lending LLC, by assignment dated March 11, 2021, and intended to be recorded simultaneously herewith, in the County of , State of New York.

Mortgages #1, #2 and #3 are consolidated by this agreement dated March 11, 2021 between 51 EAST 126TH STREET LLC and NuBridge Commerical Lending LLC to form a single lien in the amount of $1,300,000.00.

**EXHIBIT C**

# PROMISSORY NOTE

US $1,300,000.00

March 11, 2021

**FOR VALUE RECEIVED, 51 East 126th Street LLC, a New York Limited Liability Company ("Borrower")** promises to pay to the order of NuBridge Commercial Lending LLC, a Delaware limited liability company (**"Lender"**), the principal amount of **one million three hundred thousand and 00/100** Dollars (**US $1,300,000.00**) or so much thereof as shall be advanced by Lender pursuant to the terms set forth in the Loan Agreement (as defined below), (the **"Mortgage Loan"**), together with interest thereon accruing at the Interest Rate on the unpaid principal balance from the date the Advance proceeds are disbursed until fully paid in accordance with the terms hereof and of that certain Loan and Security Agreement dated as of the date hereof, by and between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the **"Loan Agreement"**).

**1.    Defined Terms.**

Capitalized terms used and not specifically defined in this Promissory Note (this **"Note"**) have the meanings given to such terms in the Loan Agreement.

**2.    Repayment; Loan Terms; Balloon Payment.**

Interest on all outstanding Advances shall accrue from the date such Advance is made until the date the Principal Amount is repaid in full as described below. Interest on all outstanding Advances shall be paid by Borrower on a monthly basis in arrears, on the first day of each month (each an **"Interest Payment Date"**) commencing the month following the month in which the first Advance is funded, and shall accrue at a rate per annum equal to **9.500%** (the **"Interest Rate"**) and shall be computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months.

Borrower shall pay to Lender the aggregate amount of all Advances funded (the **"Principal Amount"**) plus all accrued interest and any and all other amounts due and unpaid hereunder upon the earliest to occur of (i) **March 1, 2022** (the **"Maturity Date"**), (ii) such date as Lender shall determine, in its sole discretion and in good faith, that there has been a material adverse change in the operations, business, properties or condition, financial or otherwise of Borrower or any Guarantor, (iii) acceleration upon the occurrence of an event of default or otherwise pursuant to Section 7 of the Loan Agreement and (iv) such date as Borrower elects to prepay in full the Principal Amount plus the accrued but unpaid interest hereon. Such earliest date referred to herein as the **"Final Payment Due Date."**

Borrower agrees to pay the Principal Amount of the Mortgage Loan and interest on the Principal Amount of the Mortgage Loan from time to time outstanding at the Interest Rate or such other rate or rates and at the times specified in the Loan Agreement, together with all other amounts due to Lender under the Loan Documents.  The amount and date of each Advance made shall be indicated on the Schedule of Advances attached hereto, provided, that the failure of the Lender to make any such recordation or notation shall not affect the obligations of the Borrower to make a payment when due of any amount owing hereunder in respect of any Advance.

Borrower acknowledges and agrees that the entire Principal Amount is due on the Final Payment Due Date and that the Lender is under no obligation to refinance the Mortgage Loan at that time. Borrower will therefore be required to make payment out of other assets it may own, or will have to find a lender willing to lend Borrower the money at prevailing market rates, which may be considerably higher or lower

than the interest rate on this Mortgage Loan. If Borrower refinance's this Mortgage Loan at maturity, it may have to pay some or all closing costs normally associated with a new loan, even if it obtains refinancing from the same lender.

**3.      Security.**

The Mortgage Loan evidenced by this Note, together with all other Indebtedness is secured by, among other things, the Security Instrument, the Loan Agreement and the other Loan Documents. All of the terms, covenants and conditions contained in the Loan Agreement, the Security Instrument and the other Loan Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

**4.      Acceleration.**

In accordance with the Loan Agreement, if an Event of Default has occurred and is continuing, the entire unpaid principal balance of the Mortgage Loan, any accrued and unpaid interest, including interest accruing at the Default Rate, the Exit Fee (if applicable),  the Prepayment Premium (if applicable), and all other amounts payable under this Note, the Loan Agreement and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to Borrower, unless applicable law requires otherwise (and in such case, after satisfactory notice has been given).

**5.      Personal Liability.**

The provisions of Section 8 (Personal Liability) of the Loan Agreement are hereby incorporated by reference into this Note to the same extent and with the same force as if fully set forth herein.

**6.      Governing Law.**

This Note shall be governed in accordance with the terms and provisions of Section 10(a) of the Loan Agreement.

**7.      Waivers.**

Presentment, demand for payment, notice of nonpayment and dishonor, protest and notice of protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace and diligence in collecting the Indebtedness are waived by Borrower, for and on behalf of itself, Guarantor and Key Principal, and all endorsers and guarantors of this Note and all other third party obligors or others who may become liable for the payment of all or any part of the Indebtedness.

**8.      Commercial Purpose.**

Borrower represents that the Indebtedness is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise or activity, and not for agricultural, personal, family or household purposes.

9.    **Joint and Several (or Solidary, as applicable) Liability.**

(a)    If more than one Person executes this Note as Borrower, the obligations of such Person shall be joint and several (solidary instead for purposes of Louisiana law).

10.   **Notices.**

All Notices required or permitted to be given by Lender to Borrower pursuant to this Note shall be given in accordance with Section 10(e) of the Loan Agreement.

11.   **Time is of the Essence.**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Note, time is of the essence.

12.   **Loan Charges Savings Clause.**

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Mortgage Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents. Neither this Note, the Loan Agreement nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this Note and the other Loan Documents. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Mortgage Loan, or on acceleration of the maturity of the Mortgage Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation. Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Mortgage Loan without the payment of any prepayment premium (or, if the Mortgage Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Mortgage Loan. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Mortgage Loan.

13.     **WAIVER OF TRIAL BY JURY.**

**TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

14.     **Receipt of Loan Documents.**

Borrower acknowledges receipt of a copy of each of the Loan Documents.

15.     **Incorporation of Schedules.**

The schedules, if any, attached to this Note are incorporated fully into this Note by this reference and each constitutes a substantive part of this Note.

**ATTACHED SCHEDULES.**  The following Schedules are attached to this Note:

Schedule 1                    Schedule of Advances

**[Remainder of Page Intentionally Blank]**

**IN WITNESS WHEREOF**, Borrower has signed and delivered this Note under seal (where applicable) or has caused this Note to be signed and delivered under seal (where applicable) by its duly authorized representative.  Where applicable law so provides, Borrower intends that this Note shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

51 East 126th Street LLC

By: _____

Name: Vanessa Turner

Title: Member

SCHEDULE 1
SCHEDULE OF ADVANCES

This Schedule of Advances to the Promissory Note dated **March 11, 2021** made by **51 East 126th Street LLC** as Borrower for the benefit of NuBridge Commercial Lending LLC, as Lender, evidences Advances made thereunder (and pursuant to the Loan Agreement of even date therewith), to the Borrower on the dates and in the principal amounts set forth below, and subject to the payments and prepayments of principal set forth below.

| Advance Date | Amount of Advance | Amount of Principal Paid or Prepaid |
|---|---|---|
| March 11, 2021 | $1,300,000.00 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Note - Bridge**
**51 East 126th Street LLC**

**Page 6 of 6**
**Loan #**

ALLONGE TO PROMISSORY NOTE

ALLONGE to that certain Promissory Note dated **March 11, 2021** in the original principal amount of **$1,300,000.00**, made by **51 East 126th Street LLC**, a New York Limited Liability Company to the order of NuBridge Commercial Lending LLC, a Delaware limited liability company.

Pay to the order of

NuBridge Commercial Lending REO SPV I Inc.
Without Recourse

NuBridge Commercial Lending LLC

By _____

Jorge L. Ramos, EVP and Treasurer

**THIS ALLONGE IS INTENDED TO BE PERMANENTLY AFFIXED**

**TO THE PROMISSORY NOTE DESCRIBED ABOVE**

## GUARANTY OF NON-RECOURSE OBLIGATIONS

This GUARANTY OF NON-RECOURSE OBLIGATIONS (this **"Guaranty"**), dated as of **March 11, 2021**, is executed by **Vanessa Turner** (**"Guarantor"**), to and for the benefit of NuBridge Commercial Lending LLC, a Delaware limited liability company (**"Lender"**).

### RECITALS:

A.      Pursuant to that certain Loan and Security Agreement, dated as of the date hereof, by and between **51 East 126th Street LLC** (**"Borrower"**) and Lender (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the **"Loan Agreement"**), Lender is making a loan to Borrower in the original principal amount of up to **one million three hundred thousand and 00/100 dollars ($1,300,000.00)** (the **"Mortgage Loan"**), as evidenced by that certain Promissory Note, dated as of the date hereof, executed by Borrower and made payable to the order of Lender in the amount of the Mortgage Loan (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the **"Note"**).

B.      The Note will be secured by, among other things, a Security Instrument (as defined in the Loan Agreement) encumbering the real property described in the Security Instrument (the **"Mortgaged Property"**).

C.      Guarantor has an economic interest in Borrower or will otherwise obtain a material financial benefit from the Mortgage Loan.

D.      As a condition to making the Mortgage Loan to Borrower, Lender requires that Guarantor execute this Guaranty.

NOW, THEREFORE, in order to induce Lender to make the Mortgage Loan to Borrower, and in consideration thereof, Guarantor agrees as follows:

### AGREEMENTS:

**1.      Recitals.**

The recitals set forth above are incorporated herein by reference as if fully set forth in the body of this Guaranty.

**2.      Defined Terms.**

Capitalized terms used and not specifically defined herein have the meanings given to such terms in the Loan Agreement or the Security Instrument.

**3.      Guaranteed Obligations**

Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment and performance of the entire indebtedness; all amounts, obligations and liabilities owed to Lender under Section 8 (Personal Liability) of the Loan Agreement (including the payment and performance of all indemnity obligations of Borrower described in Section 9 (Indemnification) of the Loan Agreement, and including all of Borrower's obligations under the Environmental Indemnity Agreement); and all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty, upon the occurrence of any of the following, by or on behalf of, or at the direction of, Borrower, Guarantor, or any exculpated party in connection with the Mortgage Loan or the Mortgaged Property:

(a)        fraud or intentional misrepresentation;

(b)        gross negligence or willful misconduct;

(c)        the removal or disposal of any portion of the Mortgaged Property;

(d)        the misapplication, misappropriation, or conversion of Rents received;

(e)        the misapplication, misappropriation, or conversion of tenant security deposits or Rents;

(f)        the misapplication, misappropriation or conversion of insurance proceeds or condemnation awards;

(g)        Personalty taken from the Mortgaged Property and not replaced with property of the same utility and of the same or greater value;

(h)        any act of arson with respect to the Mortgaged Property;

(i)        any fees or commissions paid by Borrower to any party in violation of the terms of the Note, the Security Instrument, or any other Loan Document;

(j)        failure to pay charges for labor or materials or other charges that can create liens on any portion of the Mortgaged Property or Personalty;

(k)        any security deposits, advance deposits or any other deposits collected with respect to the Mortgaged Property not being delivered to Lender upon a foreclosure of the Mortgaged Property or action in lieu thereof, except to the extent any such security deposits were applied in accordance with the terms and conditions of any of the leases;

(l)        any failure to permit on-site inspections of the Mortgaged Property as required by the Security Instrument and/or the other Loan Documents;

(m)    any failure to appoint a new property manager upon the request of Lender as required by the terms of the Security Instrument, the Loan Agreement and/or the other Loan Documents;

(n)    failure, after lapse of all applicable notice and cure periods, to provide financial information to Lender as required by the Security Instrument, Loan Agreement, or any other Loan Document;

(o)    Borrower files a voluntary petition under the U.S. Bankruptcy Code or any other Federal or state bankruptcy or insolvency law;

(p)    any Person that controls Borrower, directly or indirectly, files, or joins in the filing of, an involuntary petition against Borrower under the U.S. Bankruptcy Code or any other Federal or state bankruptcy or insolvency law, or solicits or causes to be solicited petitioning creditors for any involuntary petition against Borrower from any person or entity (other than Lender);

(q)    Borrower files an answer consenting to or otherwise acquiescing in or joining in any involuntary petition filed against it, by any other person or entity under the U.S. Bankruptcy Code or any other Federal or state bankruptcy or insolvency law, or solicits or causes to be solicited petitioning creditors for any involuntary petition from any person or entity;

(r)    any Person, which controls Borrower consents to or acquiesces in or joins in an application for the appointment of a custodian, receiver, trustee, or examiner for Borrower or any portion of the Mortgaged Property (other than in connection with any such proceeding initiated by lender);

(s)    Borrower makes an assignment for the benefit of creditors, or admits, in writing or in any legal proceeding, of insolvency or inability to pay its debts as they become due; or

(t)    Borrower fails, after lapse of all applicable notice and cure periods, to provide financial information to Lender as required by Section 5 of the Loan Agreement (Covenants)

**4.    Survival of Guaranteed Obligations.**

The obligations of Guarantor under this Guaranty shall survive any Foreclosure Event, and any recorded release or reconveyance of the Security Instrument or any release of any other security for any of the Indebtedness.

**5.    Guaranty of Payment; Community Property.**

Guarantor's obligations under this Guaranty constitute a present and unconditional guaranty of payment and not merely a guaranty of collection. If Guarantor (or any Guarantor, if more than one) is a married person, and the state of residence of Guarantor or Guarantor's spouse is a community property jurisdiction, Guarantor (or each such married Guarantor, if more than one) agrees that Lender may satisfy Guarantor's obligations under this Guaranty to the extent of all Guarantor's separate property and Guarantor's interest in any community property.

6.      **Obligations Unsecured; Cross-Default.**

The obligations of Guarantor under this Guaranty shall not be secured by the Security Instrument or the Loan Agreement.  However, a default under this Guaranty shall be an Event of Default under the Loan Agreement, and a default under this Guaranty shall entitle Lender to be able to exercise all of its rights and remedies under the Loan Agreement, the Security Instrument, and the other Loan Document.

7.      **Continuing Guaranty.**

The obligations of Guarantor under this Guaranty shall be unconditional irrespective of the genuineness, validity, regularity, or enforceability of any provision of this Guaranty, the Note, the Loan Agreement, the Security Instrument, or any other Loan Document.  Guarantor agrees that performance of the obligations hereunder shall be a primary obligation, shall not be subject to any counterclaim, set-off, recoupment, abatement, deferment or defense based upon any claim that Guarantor may have against Lender, Borrower, any other guarantor of the obligations hereunder, or any other Person, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by any circumstance or condition (whether or not Guarantor shall have any knowledge thereof), including:

(a)      any furnishing, exchange, substitution or release of any collateral securing repayment of the Mortgage Loan, or any failure to perfect any lien in such collateral;

(b)      any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the obligations hereunder or Lender to conform or comply with any term of any of the Loan Documents or failure of Lender to give notice of any Event of Default;

(c)      any action or inaction by Lender under or in respect of any of the Loan Documents, any failure, lack of diligence, omission or delay on the part of Lender to perfect, enforce, assert or exercise any lien, security interest, right, power or remedy conferred upon it in any of the Loan Documents, or any other action or inaction on the part of Lender;

(d)      any Bankruptcy Event, or any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshaling of assets and liabilities or similar events or proceedings with respect to Guarantor or any other guarantor of the obligations hereunder, or any of their respective property or creditors or any action taken by any trustee or receiver or by any court in such proceeding;

(e)      any merger or consolidation of Borrower into or with any entity or any sale, lease or Transfer of any asset of Borrower, Guarantor or any other guarantor of the obligations hereunder to any other Person;

(f)      any change in the ownership of Borrower or any change in the relationship between Borrower, Guarantor or any other guarantor of the obligations hereunder, or any termination of such relationship;

(g)     any release or discharge by operation of law of Borrower, Guarantor or any other guarantor of the obligations hereunder, or any obligation or agreement contained in any of the Loan Documents; or

(h)     any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing, and whether seen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or Guarantor to the fullest extent permitted by law.

8.     **Guarantor Waivers.**

Guarantor hereby waives:

(a)     the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor);

(b)     the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors;

(c)     diligence in collecting the Indebtedness, presentment, demand for payment, protest and all notices with respect to the Loan Documents and this Guaranty, which may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of acceptance, notice of any amendment of the Loan Documents, notice of the occurrence of any Event of Default, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of foreclosure, notice of protest and notice of the incurring by Borrower of any obligation or indebtedness; and

(d)     all rights to require Lender to:

(1)     proceed against or exhaust any collateral held by Lender to secure the repayment of the Indebtedness;

(2)     proceed against or pursue any remedy it may now or hereafter have against Borrower or any guarantor, or, if Borrower or any guarantor is a partnership, any general partner of Borrower or general partner of any guarantor; or

(3)     demand or require collateral security from Borrower, any other guarantor or any other Person as provided by applicable law or otherwise.

9.     **No Effect Upon Obligations.**

At any time or from time to time and any number of times, without notice to Guarantor and without releasing, discharging or affecting the liability of Guarantor:

(a)     the time for payment of the principal of or interest on the Indebtedness may be extended or the Indebtedness may be renewed in whole or in part;

(b)     the rate of interest on or period of amortization of the Mortgage Loan or the amounts payable under the Loan Documents may be modified;

(c)     the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived;

(d)     the maturity of the Indebtedness may be accelerated as provided in the Loan Documents;

(e)     any or all payments due under the Loan Agreement or any other Loan Document may be reduced;

(f)     any Loan Document may be modified or amended by Lender and Borrower in any respect, including an increase in the principal amount of the Mortgage Loan;

(g)     any amounts under the Loan Agreement or any other Loan Document may be released;

(h)     any security for the Indebtedness may be modified, exchanged, released, surrendered or otherwise dealt with or additional security may be pledged or mortgaged for the Indebtedness;

(i)     the payment of the Indebtedness or any security for the Indebtedness, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower;

(j)     any payments made by Borrower to Lender may be applied to the Indebtedness in such priority as Lender may determine in its discretion; and

(k)     any other terms of the Loan Documents may be modified as required by Lender.

**10.     Joint and Several (or Solidary) Liability.**

If more than one Person executes this Guaranty as Guarantor, such Persons shall be liable for the obligations hereunder on a joint and several (solidary instead for purposes of Louisiana law) basis. Lender, in its discretion, may:

(a)     to the extent permitted by applicable law, bring suit against Guarantor, or any one or more of the Persons constituting Guarantor, and any other guarantor, jointly and severally (solidarily instead for purposes of Louisiana law), or against any one or more of them;

(b)     compromise or settle with any one or more of the Persons constituting Guarantor, or any other guarantor, for such consideration as Lender may deem proper;

(c)     discharge or release one or more of the Persons constituting Guarantor, or any other guarantor, from liability or agree not to sue such Person; and

(d)      otherwise deal with Guarantor and any guarantor, or any one or more of them, in any manner, and no such action shall impair the rights of Lender to collect from Guarantor any amount guaranteed by Guarantor under this Guaranty.

Nothing contained in this Section 10 shall in any way affect or impair the rights or obligations of Guarantor with respect to any other guarantor.

## 11.    Subordination of Affiliated Debt.

Any indebtedness of Borrower held by Guarantor now or in the future is and shall be subordinated to the Indebtedness and any such indebtedness of Borrower shall be collected, enforced and received by Guarantor, as trustee for Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

## 12.    Subrogation.

Guarantor shall have no right of, and hereby waives any claim for, subrogation or reimbursement against Borrower or any general partner of Borrower, or any other Person by reason of any payment by Guarantor under this Guaranty, whether such right or claim arises at law or in equity or under any contract or statute, until the Indebtedness has been paid in full and there has expired the maximum possible period thereafter during which any payment made by Borrower to Lender with respect to the Indebtedness could be deemed a preference under the Insolvency Laws.

## 13.    Voidable Transfer.

If any payment by Borrower is held to constitute a preference under any Insolvency Laws or similar laws, or if for any other reason Lender is required to refund any sums to Borrower, such refund shall not constitute a release of any liability of Guarantor under this Guaranty. It is the intention of Lender and Guarantor that Guarantor's obligations under this Guaranty shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance. If any payment by any Guarantor should for any reason subsequently be declared to be void or voidable under any state or federal law relating to creditors' rights, including provisions of the Insolvency Laws relating to a voidable transfer, and if Lender is required to repay or restore, in whole or in part, any such voidable transfer, or elects to do so upon the advice of its counsel, then the obligations guaranteed hereunder shall automatically be revived, reinstated and restored by the amount of such voidable transfer or the amount of such voidable transfer that Lender is required or elects to repay or restore, including all reasonable costs, expenses and legal fees incurred by Lender in connection therewith, and shall exist as though such voidable transfer had never been made, and any other guarantor, if any, shall remain liable for such obligations in full.

## 14.    Credit Report/Credit Score.

Guarantor acknowledges and agrees that Lender is authorized, no more frequently than once in any twelve (12) month period, to obtain a credit report and credit score (if applicable) on Guarantor, the cost of which shall be paid for by Guarantor. Guarantor acknowledges and agrees that Lender is authorized to obtain a credit report and credit score (if applicable) for Guarantor at any time at Lender's expense.

15.    **Financial Reporting.**

Guarantor shall deliver to Lender such Guarantor financial statements as reasonably required by Lender.

16.    **Further Assurances.**

Guarantor acknowledges that Lender (including its successors and assigns) may sell or transfer the Mortgage Loan, or any interest in the Mortgage Loan.

(a)    Guarantor shall, subject to Section 16(b) below:

(1)    do anything necessary to comply with the reasonable requirements of Lender or any investor of the Mortgage Loan or provide, or cause to be provided, to Lender or any investor of the Mortgage Loan within ten (10) days of the request, at Borrower's and Guarantor's cost and expense, such further documentation or information as Lender or investor may reasonably require, in order to enable:

(A)    Lender to sell the Mortgage Loan to such investor;

(B)    Lender to obtain a refund of any commitment fee from any such investor; or

(C)    any such investor to further sell or securitize the Mortgage Loan;

(2)    confirm that Guarantor is not in default under this Guaranty or in observing any of the covenants or agreements contained in this Guaranty (or, if Guarantor is in default, describing such default in reasonable detail); and

(3)    execute and deliver to Lender or any investor such other documentation, including any amendments, corrections, deletions, or additions to this Guaranty as is reasonably required by Lender or such investor.

(b)    Nothing in this Section 16 shall require Guarantor to do any further act that has the effect of:

(1)    changing the essential economic terms of the Security Instrument, Loan Agreement, or any other Loan Document; or

(2)    materially changing the rights and obligations of Borrower or Guarantor Security Instrument, Loan Agreement, or any other Loan Document.

17.    **Successors and Assigns.**

Lender may assign its rights under this Guaranty in whole or in part and, upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of such assignee to the extent so assigned.  Guarantor may not assign its rights, duties or obligations under this Guaranty, in whole or in part, without Lender's prior written consent and any such assignment

shall be deemed void ab initio.  The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties.

18.    **Final Agreement.**

Guarantor acknowledges receipt of a copy of each of the Loan Documents and this Guaranty.  THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  All prior or contemporaneous agreements, understandings, representations and statements, oral or written, are merged into this Guaranty.  Neither this Guaranty nor any of its provisions may be waived, modified, amended, discharged or terminated except by an agreement in writing signed by the party against which the enforcement of the waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in that agreement.

19.    **Governing Law.**

This Guaranty shall be governed by and construed in accordance with the substantive law of the Property Jurisdiction without regard to the application of choice of law principles that would result in the application of the laws of another jurisdiction.

20.    **Property Jurisdiction.**

Guarantor agrees that any controversy arising under or in relation to this Guaranty shall be litigated exclusively in the Property Jurisdiction.  The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to this Guaranty or any other Loan Document with respect to the subject matter hereof.  Guarantor irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

21.    **Time is of the Essence.**

Guarantor agrees that, with respect to each and every obligation and covenant contained in this Guaranty, time is of the essence.

22.    **No Reliance.**

Guarantor acknowledges, represents and warrants that:

(a)    it understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents;

(b)    it is familiar with the provisions of all of the documents and instruments relating to such transactions;

(c)     it understands the risks inherent in such transactions, including the risk of loss of all or any part of the Mortgaged Property or of the assets of Guarantor;

(d)     it has had the opportunity to consult counsel; and

(e)     it has not relied on Lender for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or otherwise relied on Lender in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

23.    **Notices.**

Guarantor agrees to notify Lender of any change in Guarantor's address within ten (10) Business Days after such change of address occurs.  All notices under this Guaranty shall be:

(a)     in writing and shall be either:

(1)     delivered, in person;

(2)     mailed, postage prepaid, either by registered or certified delivery, return receipt requested;

(3)     sent by overnight courier; or

(4)     sent by electronic mail with originals to follow by overnight courier;

(b)     addressed to the intended recipient at the notice addresses provided under the signature block at the end of this Guaranty; and

(c)     deemed given on the earlier to occur of:

(1)     the date when the notice is received by the addressee; or

(2)     if the recipient refuses or rejects delivery, the date on which the notice is so refused or rejected, as conclusively established by the records of the United States Postal Service or such express courier service.

24.    **Construction.**

(a)     Any reference in this Guaranty to an "Exhibit" or "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an exhibit or schedule attached to this Guaranty or to a Section or Article of this Guaranty.

(b)     Any reference in this Guaranty to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(c)     Use of the singular in this Guaranty includes the plural and use of the plural includes the singular.

(d)     As used in this Guaranty, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(e)     Whenever Guarantor's knowledge is implicated in this Guaranty or the phrase "to Guarantor's knowledge" or a similar phrase is used in this Guaranty, Guarantor's knowledge or such phrase(s) shall be interpreted to mean to the best of Guarantor's knowledge after reasonable and diligent inquiry and investigation.

(f)     Unless otherwise provided in this Guaranty, if Lender's approval, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(g)     All references in this Guaranty to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(h)     "Lender may" shall mean at Lender's discretion, but shall not be an obligation.

25.     **WAIVER OF JURY TRIAL.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH OF GUARANTOR AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS GUARANTY OR ANY LOAN DOCUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY GUARANTOR AND LENDER, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

26.     **Schedules.**

The schedules, if any, attached to this Guaranty are incorporated fully into this Guaranty by this reference and each constitutes a substantive part of this Guaranty.

**ATTACHED SCHEDULE.**  The following Schedule is attached to this Guaranty:

**[Remainder of Page Intentionally Blank]**

**IN WITNESS WHEREOF**, Guarantor has signed and delivered this Guaranty under seal (where applicable) or has caused this Guaranty to be signed and delivered under seal (where applicable) by its duly authorized representative.  Where applicable law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

GUARANTOR:

_____

Vanessa Turner

Address for Notices to Guarantor:

401 First Ave, #51
New York, NY 10010
_____

Email address: vanessalcate@gmail.com

EXHIBIT D

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br><br>**2021101900426001002EFCB2** |
|---|---|

<table>
<tr><td colspan="3" align="center"><b>RECORDING AND ENDORSEMENT COVER PAGE</b></td><td align="right"><b>PAGE 1 OF 6</b></td></tr>
<tr><td colspan="2"><b>Document ID:</b> 2021101900426001</td><td>Document Date: 09-24-2021</td><td>Preparation Date: 10-25-2021</td></tr>
<tr><td colspan="4"><b>Document Type:</b> ASGN OF ASGN OF L&R<br><b>Document Page Count:</b> 4</td></tr>
</table>

| **PRESENTER:**<br><br>THE MARGOLIN & WEINREB LAW GROUP, LLP<br>165 EILEEN WAY SUITE 101<br>SYOSSET, NY 11791<br>JOANNE@NYFCLAW.COM | **RETURN TO:**<br><br>THE MARGOLIN AND WEINREB LAW GROUP LLP<br>165 EILEEN WAY STE 101<br>SYOSSET, NY 11791<br>SUPPORT@SIMPLIFILE.COM |
|---|---|

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1751 | 29 | Entire Lot | 51 EAST 126TH STREET |

**Property Type:** COMMERCIAL REAL ESTATE

### CROSS REFERENCE DATA

**Document ID:** 2021031800950004
☒ Additional Cross References on Continuation Page

### PARTIES

| **ASSIGNOR:**<br>NUBRIDGE COMMERCIAL LENDING LLC<br>21680 GATEWAY CENTER DRIVE #230<br>DIAMOND BAR, CA 91765 | **ASSIGNEE:**<br>NUBRIDGE COMMERCIAL LENDING REO SPY I INC.<br>21680 GATEWAY CENTER DRIVE #230<br>DIAMOND BAR, CA 91765 |
|---|---|

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | |
| Taxable Mortgage Amount: | $ | 0.00 | $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES: County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 57.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        10-25-2021 15:23
City Register File No.(CRFN):
**2021000420869**

*Annette M Hill*

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2021101900426001002CFE32

| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | | PAGE 2 OF 6 |
|---|---|---|
| **Document ID:** 2021101900426001 | Document Date: 09-24-2021 | Preparation Date: 10-25-2021 |
| Document Type: ASGN OF ASGN OF L&R | | |

**CROSS REFERENCE DATA**
**CRFN:** 2021000103270
**CRFN:** 2016000166209
**CRFN:** 2016000370494
**CRFN:** 2016000370495
**CRFN:** 2016000370496
**CRFN:** 2016000370497
**CRFN:** 2017000243849
**CRFN:** 2016000166209
**CRFN:** 2021000103269
**CRFN:** 2021000103271

*(Space above reserved for recording information)*

Prepared by, and after recording return to:

_____

_____

_____

_____

## ASSIGNMENT OF SECURITY INSTRUMENT

As of September 24, 2021, NUBRIDGE COMMERCIAL LENDING LLC, a Delaware limited liability company ("Assignor") having an address at 21680 Gateway Center Drive #230, Diamond Bar, CA 91765, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Assignor, hereby assigns unto

NUBRIDGE COMMERCIAL LENDING REO SPV I INC., a Delaware corporation ("Assignee") having an address at 21680 Gateway Center Drive #230, Diamond Bar, CA 91765,

and does hereby grant, bargain, sell, convey, assign, transfer and set over unto Assignee all of the right, title and interest of Assignor in and to that certain Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of **March 11, 2021**, made and executed by **51 East 126th Street LLC**, a **New York Limited Liability Company** as mortgagor, and recorded as Document ID # 2021031800950004, in the office of the Register/Clerk of the County of **New York**, State of **New York**, covering premises known as and by:

Street Address: **51 East 126th Street, New York, NY 10035**

See Legal Description Attached as Exhibit A.

See Schedule of Mortgages Attached as Exhibit B.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of the instrument so requires.

This assignment is not subject to the requirements of Section 275 of the real property law because it is an assignment within the secondary mortgage market.

## [Remainder of Page Intentionally Blank]

IN WITNESS WHEREOF, Assignor has duly executed this assignment effective as of the day and year first above written.

ASSIGNOR:

NUBRIDGE COMMERCIAL LENDING LLC

By_____

Name: Jorge L. Ramos

Title:   EVP and Treasurer

**ACKNOWLEDGEMENT**

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

State of California
County of Los Angeles

On September 24, 2021 before me Josh Christian Miller, Notary Public, personally appeared Jorge L. Ramos, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JOSH CHRISTIAN MILLER
Notary Public · California
Los Angeles County
Commission # 2270352
My Comm. Expires Dec 9, 2022

**Notary Public**: Los Angeles County, California
**Printed Name**: Josh Christian Miller
**My Commission expires**: December 9, 2022
**Commission #**: 2270352

## EXHIBIT A

### Legal Description

SECTION: 6 BLOCK: 1751 LOT: 29 ON THE TAX MAP OF NEW YORK COUNTY

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Northerly side of 126th Street, distant 170 feet Westerly from the corner formed by the intersection of the Northerly side of 126th Street with the Westerly side of Park Avenue;

RUNNING THENCE Northerly parallel with Park Avenue and part of the way through a party wall, 99 feet 11 inches to the center line of the block;

THENCE Westerly along the said center line of the block, 25 feet;

THENCE Southerly parallel with Park Avenue and part of the way through another party wall, 99 feet 11 inches to the Northerly side of 126th Street; and

THENCE Easterly along the Northerly side of 126th Street, 25 feet to the point or place of BEGINNING.

FOR CONVEYANCING ONLY, IF INTENDED TO BE CONVEYED: TOGETHER WITH ALL RIGHT, TITLE AND INTEREST OF, IN AND TO ANY STREETS, ROADS, OR AVENUES ABUTTING THE ABOVE DESCRIBED PREMISES, TO THE CENTER LINE THEREOF.

For informational purposes only: 51 East 126th Street, New York, NY 10035

## EXHIBIT B

### Schedule of Mortgages

(1)   The Mortgage given by 51 EAST 126TH STREET LLC and dated March 11, 2021 in favor of NuBridge Commerical Lending LLC securing the original principal amount of $482,771.63. This Mortgage was recorded March 22, 2021 in CRFN 2021000103270 in the County of New York, State of New York. This Mortgage secures a Note dated March 11, 2021.

(2)   The Mortgage given by 51 EAST 126TH STREET LLC dated April 26, 2016 in favor of 126th Street Funding LLC, securing the original principal amount of $499,999.00, recorded May 13, 2016 in CRFN 2016000166209, in the County of New York, State of New York.  This Mortgage secures a Note dated April 26, 2016.  At this date, the unpaid principal balance secured by this Mortgage is $817,228.37.

This Mortgage was assigned by 126th Street Funding LLC to 126th Street Funding LLC, by assignment dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370494, in the County of New York, State of New York.

(3)   The Mortgage given by 51 EAST 126TH STREET LLC dated October 16, 2016 in favor of Readycap Commerical, LLC, securing the original principal amount of $385,001.00, recorded October 20, 2016 in CRFN 2016000370495.  This Mortgage secures a Note dated October 16, 2016.

A Consolidation, Extension and Modification Agreement given by 51 EAST 126TH STREET LLC to Readycap Commerical, LLC dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370496, in the County of New York, State of New York, consolidates the above Mortgages to form a single lien in the amount of $885,000.00.

This Mortgage was assigned by Readycap Commerical, LLC to Federal Home Loan Mortgage Corporation, by assignment dated October 19, 2016, recorded October 20, 2016 in CRFN 2016000370497, in the County of New York, State of New York.  Assignment of Mortgage in CRFN 2016000166209 and CRFN 2016000370495 as consolidated

This Mortgage was assigned by Federal Home Loan Mortgage Corporation to Deutsche Bank National Trust Company, by assignment dated June 27, 2017, recorded July 3, 2017 in CRFN 2017000243849, in the County of New York, State of New York.  Assignment of Mortgage in CRFN 201600166209 and CRFN 20100370495 as consolidated

This Mortgage was assigned by Deutsche Bank National Trust Company to NuBridge Commercial Lending LLC, by assignment dated March 11, 2021, recorded March 22, 2021 in CRFN 2021000103269, in the County of New York, State of New York.

Mortgages #1, #2 and #3 are consolidated by this agreement dated March 11, 2021 between 51 EAST 126TH STREET LLC and NuBridge Commerical Lending LLC to form a single lien in the amount of $1,300,000.00, recorded March 22, 2021 in CRFN 2021000103271, in the County of New York, State of New York.

**EXHIBIT E**

October 1, 2021

Via Certified and Regular First Class Mail

51 East 126th Street, LLC
51 East 126th Street
New York, NY 10035

7020 3160 0001 8006 2312

Vanessa Turner
51 East 126th Street
New York, NY 10035

7020 3160 0001 8006 2329

51 East 126th Street, LLC
401 First Ave., 5D-4
New York, NY 10010

7020 3160 0001 8006 2343

Vanessa Turner
401 First Ave., 5D-4
New York, NY 10010

7020 3160 0001 8006 2336

Re:     NOTICE OF ACCELERATION AND INTENT TO FORECLOSE

        Lender:         Nubridge Commercial Lending REO SPV I Inc.

        Borrower:       51 East 126th Street, LLC

        Guarantor:      Vanessa Turner

        Property:       51 East 126th Street, New York, NY 10035

Ladies and Gentlemen:

        This firm has been engaged by Nubridge Commercial Lending REO SPV I Inc., with respect to the above-referenced matter. The Lender is the holder and owner of the above referenced Loan Documents. You are hereby advised that the borrower is in default of its obligations under the Loan Documents (the "Default") by, among other things, failing to make payments of interest when due on said Loan Documents. You are thus hereby advised that as a result of said Default, the Lender is hereby electing and does hereby elect to IMMEDIATELY ACCELERATE all amounts due on the Loan Documents.

        Consequently, in accordance with the terms of the Loan Documents, DEMAND IS HEREBY MADE for the immediate payment of all sums due pursuant to the Loan Documents

(the "Indebtedness"). The Indebtedness outstanding on the Loan Documents as of October 1, 2021, is as follows:

| | |
|---|---|
| Unpaid Principal Balance | $1,300,000.00 |
| Unpaid Installments | $41,166.58 |
| Unpaid Charges | $3,525.00 |
| Late Charges | $2,058.32 |
| **INDEBTEDNESS AS OF 10/01/2021** | **$1,346,750.00** |

(Plus attorney's fees, costs and disbursements)

Until the Indebtedness is paid in full, interest will continue to accrue at the default rate provided for under the Loan Documents (the "Default Interest Rate") together with late charges, as well as costs and legal fees as provided for in the Loan Documents.

Please be advised that if payment in full of the Indebtedness is not received within thirty (30) days from the date of this letter, the Lender intends to pursue its rights and remedies, including, without limitation, the institution of foreclosure and legal proceedings against the Borrower and the Property. These actions will result in additional expenses that will be added to the amount required to pay off the Loan.

The fact that the Lender has not noted any other facts which constitute, or form the basis of a default or an event of default under the Loan Documents is not, and shall not be deemed to be a waiver of any default or event of default, whether now or hereafter existing under the Loan Documents.

The Lender hereby reserves:

(1) the right to notify Borrower of any default or event of default under the Loan Documents not noted herein;

(2) All of the Lender's rights and remedies with respect to any or event of default under the Loan Documents, whether now or hereafter existing and whether or not noted herein.

This letter shall not entitle the Borrower or any guarantor to any other or further notice, Whether in connection with the aforesaid defaults or events of default or in connection with any other default or event of default or noncompliance or otherwise.

Your right to collect and retain rents, issues and profits of the Property (collectively, the "Rents") has been terminated and the Lender hereby renews its demand that you deliver and turn over all of the Rents to the Lender.

Nothing contained herein or omitted in this letter is intended to, nor shall it constitute, a Waiver or relinquishment of any of the Lender's rights and remedies, all of which are expressly reserved. Any partial payments made by you will be credited against the amount owed, but shall not be deemed a waiver or cure of the Default invoked by the Lender or an impairment of the Lender's rights and remedies pursuant to the Loan Documents or under the law.

Please feel free to contact the undersigned to request the full amount of the payoff of the Loan.

Please be guided accordingly.

Very truly yours,

The Margolin & Weinreb Law Group, LLP

Alan H. Weinreb, Esq.

Cc:   Nubridge Commercial Lending REO SPV I Inc.

7020 3160 0001 8006 2329

U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

OFFICIAL USE

Certified Mail Fee
3.55

Postage
0.53

Total Postage and Fees
6.93

Sent To
Vanessa Turner
51 East 126th Street
New York, NY 10035

Postmark Here

PS Form 3800, April 2015

---

U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com

OFFICIAL USE

Certified Mail Fee
3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ 2.85
☐ Return Receipt (electronic)       $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required          $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
0.53

Total Postage and Fees
6.93

Sent To
51 East 126th Street, LLC
Street and Apt. No.
51 East 126th Street
City, State, ZIP+4
New York, NY 10035

Postmark Here

PS Form 3800, April 2015                See Reverse for Instructions

---

7020 3160 0001 8006 2343

U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com

OFFICIAL USE

Certified Mail Fee
3.55

Postage
0.53

Total Postage and Fees
6.93

Sent To
51 East 126th Street, LLC
401 First Ave, 5D-4
New York, NY 10010

Postmark Here

PS Form 3800, April 2015

---

U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com

OFFICIAL USE

Certified Mail Fee
3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ 2.85
☐ Return Receipt (electronic)       $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required          $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
0.53

Total Postage and Fees
6.93

Sent To
Vanessa Turner
Street and Apt. No.
401 First Ave, 5D-4
City, State, ZIP+4
New York, NY 10010

Postmark Here

PS Form 3800, April 2015                See Reverse for Instructions

**Card 1:**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vanessa Turner
401 First Ave, 5D-4
New York, NY 10010

9590 9402 6519 0346 7559 02

2. Article Number (Transfer from service label)
7020 3160 0001 8006 7336

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**Card 2:**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

51 East 126th Street, LLC
51 East 126th Street
New York, NY 10035

9590 9402 6519 0346 7558 58

2. Article Number (Transfer from service label)
7020 3160 0001 8006 6312

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

## First receipt

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

51 East 126th Street, LLC
401 First Ave., SD-4
New York, NY 10010

9590 9402 6519 03346 7558 72

2. Article Number (Transfer from service label)
7020 3160 0001 8006 2849

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:          □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery
  (over $500)
□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

Domestic Return Receipt

## Second receipt

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vanessa Turner
51 East 126th Street
New York, NY 10035

9590 9402 6519 03346 7558 89

2. Article Number (Transfer from service label)
7020 3160 0001 8006 2839

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:          □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery
  (over $500)
□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Signature Confirmation™
□ Restricted Delivery

Domestic Return Receipt

AFFIDAVIT OF MAILING

Property Address: 51 East 126th Street, New York, NY 10035


STATE OF NEW YORK)
                  ) ss:
COUNTY OF NASSAU)


     Alyssa Robinson, being duly sworn, deposes and says:

     That I am not a party to the action, am over the age of 18 years and work in Nassau County, New York.

     In accordance with the standard mailing practices and procedures, on October 1st 2021 deponent served the **30-day Demand Letter** by depositing a true copy by **certified mail and first-class mail** thereof in a post-paid wrapper, in an official United States Postal depository under the care and custody of the United States Postal Service within the State of New York.

     Each of the notices were addressed to each of the following persons at the last known address set forth after each name:

51 East 126th Street, LLC
51 East 126th Street
New York, NY 10035

51 East 126th Street, LLC
401 First Ave., 5D-4
New York, NY 10010

Vanessa Turner
51 East 126th Street
New York, NY 10035

Vanessa Turner
401 First Ave., 5D-4
New York, NY 10010


                              *Alyssa Robinson*
                                Alyssa Robinson


Sworn to before me this
1st Day of October    , 2021

Notary Public

Sandy J. Stolar
Notary Public, State of New York
No. 02ST6238228
Qualified in Nassau County
Commission Expires: April 04,20 23

**EXHIBIT F**



**THE**

# MARGOLIN & WEINREB

L A W   G R O U P ,   L L P
**ATTORNEYS AT LAW**

165 Eileen Way, Suite 101
Syosset, New York 11791

T. (516) 921-3838
F. (516) 921-3824
www.nyfclaw.com

ALAN WEINREB, ESQ.        C. LANCE MARGOLIN, ESQ.        CYNTHIA A. NIERER, ESQ.

Sent via regular mail and
Certified Mail Return Receipt

October 1, 2021

51 East 126th Street, LLC
51 East 126th Street
New York, NY 10035

7020 3160 0001 8006 2350

51 East 126th Street, LLC
401 First Ave., 5D-4
New York, NY 10010

7020 3160 0001 8006 2374

Vanessa Turner
51 East 126th Street
New York, NY 10035

7020 3160 0001 8006 2367

Vanessa Turner
401 First Ave., 5D-4
New York, NY 10010

7020 3160 0001 8006 2381

RE:  HARDSHIP DECLARATION
Property: 51 East 126th Street, New York, NY 10035
Loan No.:

Dear Borrower:

This office represents Nubridge Commercial Lending REO SPV I Inc., lender with regard to the above-noted loan.

Pursuant to the COVID-19 Emergency Protect Our Small Businesses Act of 2021, please find a Hardship Declaration annexed for your review. If you choose to sign and return the Hardship Declaration please return same to the address below. If you have any questions or wish to speak to Nubridge Commercial Lending REO SPV I Inc., their telephone number and email address are also included:

---

**WE ARE A DEBT COLLECTOR AND ARE ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The Margolin & Weinreb Law Group, LLP may be a debt collector attempting to collect a debt and any information obtained may be used for that purpose. If you are in a pending bankruptcy proceeding, The Margolin & Weinreb Law Group, LLP will take no action, except as allowed under the Bankruptcy Code. If you received a Chapter 7 discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement against the collateral property.

  

Nubridge Commercial Lending LLC
21680 Gateway Center Drive #230
Diamond Bar, CA 91765
Attn: Loan Servicing Department
800-833-4714 x 123
servicing@nubridge.com

Please note, if you are represented by an attorney in your case, please contact your lawyer immediately, provide them with a copy of this Declaration and discuss how to proceed.

Be sure to keep a copy of the signed declaration for your records.

Respectfully,

The Margolin & Weinreb Law Group, LLP



# NOTICE TO COMMERCIAL MORTGAGOR:

If you have lost significant revenue or had significantly increased necessary costs during the COVID-19 pandemic, and you sign and deliver this hardship declaration form to your mortgage lender or other foreclosing party, you may be protected from foreclosure until at least January 15, 2022.

If a foreclosure action is filed against you and you provide this form to the plaintiff or the court, the action will be postponed until January 15, 2022 unless the plaintiff moves to challenge your declaration of hardship. If the court finds your hardship claim valid, the foreclosure action will be postponed until after January 15, 2022. While the action is postponed, you may remain in possession.

If your mortgage lender or other foreclosing party provided you with this form, the mortgage lender or other foreclosing party must also provide you with a mailing address and e-mail address to which you can return this form. If you are already in foreclosure proceedings, you may return this form to the court. You should keep a copy or picture of the signed form for your records. You will still owe any unpaid mortgage payments and lawful fees to your lender. You should also keep careful track of what you have paid and any amount you still owe.

Commercial Foreclosure - 9/21 - English



Index Number (if known/applicable): _____

County and Court (if known/applicable): _____

# COMMERCIAL MORTGAGOR'S DECLARATION OF COVID-19-RELATED HARDSHIP

I am the owner, chief executive officer, president, or similar officer of (name of business),

_____

which is the mortgagor of the property at (address of commercial unit).

_____

☐ My business owns, whether directly or indirectly, ten or fewer commercial units. My business is resident in New York State, independently owned and operated, not dominant in its field, and employs one hundred or fewer persons. My business is experiencing financial hardship, and is unable to pay the mortgage in full because of one or more of the following:

1. Significant loss of revenue during the COVID-19 pandemic.

2. Significant increase in necessary expenses related to providing personal protective equipment to employees or purchasing and installing other protective equipment to prevent the transmission of COVID-19 within the business.

3. Moving expenses and difficulty in securing an alternative commercial property make it a hardship for the business to relocate to another property during the COVID-19 pandemic.

4. One or more of the business's tenants has defaulted on a significant amount of their rent payments since March 1, 2020.

To the extent the business has lost revenue or had increased expenses, any public assistance the business has received since the start of the COVID-19 pandemic must not fully make up for the business's loss of revenue or increased expenses.

I understand that the business must comply with all other lawful terms under my commercial mortgage agreement. I further understand that lawful fees, penalties or interest for not having paid the mortgage in full or met other financial obligations as required by the commercial mortgage agreement may still be charged or collected and may result in a monetary judgment. I further understand that the mortgage lender or other foreclosing party may request a hearing to challenge the certification of hardship made herein, and that I will have the opportunity to participate in any actions or proceedings regarding the mortgage interest. I also understand that the mortgage lender or other foreclosing party may pursue a foreclosure action against the business on or after January 15, 2022, if I do not fully repay any missed or partial payments and lawful fees.  I understand that I may be eligible to receive financial assistance from the State of New York under the Pandemic Small Business Recovery Grant Program or similar relief program, and that I may visit https://esd.ny.gov/business-pandemic-recovery-initiative to receive additional information or call 877-721-0097 for assistance.

Signed: _____

Printed name: _____

Date signed: _____

**NOTICE:** You are signing and submitting this form under penalty of law. That means it is against the law to make a statement on this form that you know is false.



# AVISO AL DEUDOR HIPOTECARIO COMERCIAL:

Si ha perdido ingresos significativos o han aumentado de manera significativa sus gastos necesarios durante la pandemia de COVID-19 y firma y entrega este formulario de declaración de penuria financiera a su acreedor hipotecario o a otra parte que haya iniciado una ejecución hipotecaria, podrá recibir protección contra la ejecución hipotecaria hasta por lo menos el 15 de enero, 2022.

Entréguele este formulario a la parte demandante o al tribunal si se ha iniciado una ejecución hipotecaria en su contra y la acción de ejecución hipotecaria se postergará hasta el 15 de enero de 2022 a menos que la parte demandante rete la declaración de penuria. La acción de ejecución hipotecaria se postergará hasta el 15 de enero de 2022 si el tribunal determina que su reclamo de penuria es válido. Podrá continuar la tenencia inmobiliaria durante la postergación de la acción.

Si su acreedor hipotecario u otra parte que haya iniciado una ejecución hipotecaria le proporcionó este formulario, el acreedor hipotecario o la parte que inició la acción de ejecución hipotecaria también debe proporcionarle una dirección postal y una dirección de correo electrónico para enviarle este formulario. Si ya se encuentra en medio de un procedimiento de ejecución hipotecaria, podrá entregar este formulario al tribunal.  Debe conservar una copia o fotografía del formulario firmado para su archivo. Usted aún deberá la hipoteca impaga y las cuotas legales a su acreedor. Se le recomienda mantener un registro detallado de sus pagos y lo que debe.



Número de índice (si es conocido/corresponde): _____

Condado y Tribunal (si es conocido/corresponde): _____

# DECLARACIÓN DEL DEUDOR HIPOTECARIO DE PENURIA RELACIONADA CON COVID-19

Soy el(la) propietario(a), director(a) general, presidente o ejecutivo(a) similar de (nombre del negocio),

_____

deudor hipotecario del inmueble situado en (dirección de la unidad comercial).

_____

☐ Mi negocio posee, de manera directa o indirecta, hasta diez unidades comerciales. Mi negocio es residente del estado de Nueva York, de propiedad y operación independiente, no es dominante en su sector y emplea hasta 100 personas. Mi negocio está pasando penuria financiera y no puede pagar la hipoteca en su totalidad por una o más de las siguientes causas:

1. Pérdida significativa de ingresos durante la pandemia de COVID-19.

2. Aumento significativo de los gastos necesarios relacionados con el suministro de equipo de protección personal a los empleados o con la compra e instalación de otros equipos protectores para prevenir la transmisión de COVID-19 en el negocio.

3. Los gastos de mudanza y la dificultad de conseguir un inmueble comercial alternativo le dificultan excesivamente al negocio mudarse a otro inmueble durante la pandemia de COVID-19.

4. Uno o más de los inquilinos del negocio han incumplido con la entrega de una cantidad significativa de sus pagos de alquileres desde el 1 de marzo de 2020.

En la medida en que el negocio ha perdido ingresos y han aumentado los gastos, la asistencia pública recibida por el negocio desde el inicio de la pandemia COVID-19 no compensa por completo la pérdida de ingresos o el aumento en los gastos.

Entiendo que el negocio debe cumplir con los demás términos legales de mi contrato hipotecario comercial. Además, entiendo que aún se pueden acumular o cobrar las cuotas legales, multas e intereses por no haber liquidado la hipoteca o cumplido con las demás obligaciones financieras según lo establecido en mi contrato hipotecario comercial, y que pueden redundar en un fallo monetario. Además, entiendo que el acreedor hipotecario u otra parte que haya iniciado una ejecución hipotecaria podría solicitar una audiencia para retar la certificación de penuria aquí presentada y que tendré la oportunidad de participar en todas las acciones o todos los procedimientos respecto a los intereses hipotecarios. Además, entiendo que el acreedor hipotecario u otra parte que haya iniciado una ejecución hipotecaria puede iniciar una acción de ejecución hipotecaria en contra del negocio a partir del 15 de enero de 2022, si no he liquidado en su totalidad todos los pagos omitidos o parciales y las cuotas legales. Entiendo que podría recibir ayuda financiera del estado de Nueva York bajo el programa de subsidios para la recuperación microempresarial post pandemia o programas similares, y que para más información puedo visitar   https://esd.ny.gov/business-pandemic-recovery-initiative o llamar al 877-721-0097.

Firma: _____

Nombre impreso: _____

Fecha: _____

**AVISO:** Usted firma y envía este formulario bajo pena de ley.  Esto significa que es ilegal hacer a sabiendas una declaración falsa en este formulario.

## AFFIDAVIT OF MAILING

Property Address: 51 East 126th Street, New York, NY 10035

STATE OF NEW YORK)
                  ) ss:
COUNTY OF NASSAU)

      Alyssa Robinson, being duly sworn, deposes and says:

      That I am not a party to the action, am over the age of 18 years and work in Nassau County, New York.

      In accordance with the standard mailing practices and procedures, on October 2021, deponent served the **Hardship Declaration with Notice by first class mail and by certified mail/return receipt** thereof in a post-paid wrapper, in an official United States Postal depository under the care and custody of the United States Postal Service within the State of New York.

      Each of the notices were addressed to each of the following persons at the last known address set forth after each name:

51 East 126th Street, LLC
51 East 126th Street
New York, NY 10035

51 East 126th Street, LLC
401 First Ave., 5D-4
New York, NY 10010

Vanessa Turner
51 East 126th Street
New York, NY 10035

Vanessa Turner
401 First Ave., 5D-4
New York, NY 10010


Alyssa Robinson

Sworn to before me this
1st Day of October 2021


Notary Public

Sandy J. Stolar
Notary Public, State of New York
No. 02ST6238228
Qualified in Nassau County
Commission Expires: April 04,20 23

EXHIBIT G

# DataTrace

## Documents related to: 51 EAST 126TH ST, 51 E 126TH ST

### Judgment Docket & Lien Information (from 1/01/1987 to 9/03/2021):

This search for Judgment/Liens against 51 EAST 126TH ST / 51 E 126TH ST in New York COUNTY from 8/30/2011 to Not Entered has returned 2 results (1 selected for print/export) for All Book Type. Run on 9/13/2021

### #1 Judgment Docket - Control Number 004036238 01

| Docketing Data: | | Source Document: | |
|---|---|---|---|
| Docketing Date: | 8/6/2021 | Type: | JDB - JUDGMENTS |
| Docketing Time: | 02:51 AM | County: | NEW YORK |
| Effective Date: | 8/6/2021 | Court: | SUPREME COURT |
| Effective Time: | 02:51 AM | Index #: | 450050/21 |
| Clerk / Seq #: | BCAUSER 006 | Total Debtors: | 01 |

| Debtor / Corporation: | | Creditor: | |
|---|---|---|---|
| Name: | 51 EAST 126TH STREET LLC | Name: | CITY OF NEW YORK (THE) |
| Type: | C | Type: | C |
| Address: | 51 EAST 126TH STREET | Address: | 100 CHURCH STREET |
| City: | NEW YORK NY | City ID: | NEW YORK NY |
| ZipCode: | 10035 | ZipCode: | |
| Occupation: | | | |

### Creditor Attorney:

| | |
|---|---|
| Name: | PESTANA, GEORGIA M |
| Address: | 22, READE STREET 4TH FLR |
| City: | NEW YORK NY |
| Zip Code: | 10007 |
| Type: | I |

### Satisfaction Data:

| | | | |
|---|---|---|---|
| Type: | | Sheriff's Execution: | |
| Date: | | Operator ID: | |
| Amount: | $70,000.00 | | |

### Remarks:

No Remarks

Download Date: 8/9/2021

## FTLs: (from 1/01/1994 to 9/06/2021)

**This search for FTL's against 51 EAST 126TH ST / 51 E 126TH ST in New York COUNTY has returned** 0 results. Run on 9/13/2021

## TAB Book Date: 8/21/2021

**This search for TAB's against 51 EAST 126TH ST / 51 E 126TH ST has returned** 0 results. Run on 9/13/2021

Data Loaded: 8/25/2021

## Parking Violations Filed Date: 8/26/2021

**This search for PVB's against 51 EAST 126TH ST / 51 E 126TH ST has returned** 0 results. Run on 9/13/2021

Data Loaded: 8/26/2021

## ECB's vs Name as of 8/2021

**This search for ECB's against 51 EAST 126TH ST / 51 E 126TH ST has returned** 13 results (13 selected for print/export). Run on 9/13/2021

| Name | Violation # | Order Date | Notice Date | Docket Date | Balance | Satisfaction |
|------|-------------|------------|-------------|-------------|---------|--------------|
| 51 EAST 126TH STREET LLC | 035457913M | 1/23/20 | 3/09/20 | 4/2020 | $25,000.00 | |
| **Address:** 1 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457914Y | 1/23/20 | 3/09/20 | 4/2020 | $25,000.00 | |
| **Address:** 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457915X | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| **Address:** 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457916H | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| **Address:** 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457917J | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| **Address:** 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET | 0205614357 | 12/10/18 | 1/24/19 | 3/2019 | $300.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 042589541Z | 8/28/18 | 10/12/18 | 11/2018 | $25.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043509552H | 9/11/18 | 10/26/18 | 12/2018 | $300.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043801137Z | 7/11/16 | 8/25/16 | 10/2016 | $25.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043596706J | 8/25/17 | 10/10/17 | 11/2017 | $300.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043098939Z | 3/27/18 | 5/11/18 | 6/2018 | $300.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 0192338420 | 12/14/16 | 1/30/17 | 3/2017 | $300.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 046937908J | 5/24/21 | 7/08/21 | 8/2021 | $25.00 | |
| **Address:** 51 EAST 126 STREET NEW YORK 10035 | | | | | | |

Data Loaded: 8/19/2021

# DataTrace
## Documents related to: 51 EAST 126 ST, 51 E 126 ST

### Judgment Docket & Lien Information (from 1/01/1987 to 9/03/2021):

This search for Judgment/Liens against 51 EAST 126 ST / 51 E 126 ST in New York COUNTY from 8/30/2011 to Not Entered has returned 0 results for All Book Type. Run on 9/13/2021

### FTLs: (from 1/01/1994 to 9/06/2021)

This search for FTL's against 51 EAST 126 ST / 51 E 126 ST in New York COUNTY has returned 0 results. Run on 9/13/2021

### TAB Book Date: 8/21/2021

This search for TAB's against 51 EAST 126 ST / 51 E 126 ST has returned 0 results. Run on 9/13/2021

Data Loaded: 8/25/2021

### Parking Violations Filed Date: 8/26/2021

This search for PVB's against 51 EAST 126 ST / 51 E 126 ST has returned 0 results. Run on 9/13/2021

Data Loaded: 8/26/2021

### ECB's vs Name as of 8/2021

This search for ECB's against 51 EAST 126 ST / 51 E 126 ST has returned 5 results (5 selected for print/export). Run on 9/13/2021

| Name | Violation # | Order Date | Notice Date | Docket Date | Balance | Satisfaction |
|------|-------------|------------|-------------|-------------|---------|--------------|
| 51 EAST 126 ST LLC | 035438475H | 10/24/19 | 12/09/19 | 1/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 032086892N | 3/02/17 | 4/17/17 | 6/2017 | $2,500.00 | |
| Address: 51 EAST 126 STREET NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 035438247X | 10/24/19 | 12/09/19 | 1/2020 | $10,000.00 | |
| Address: 51 EAST 126 ST NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 035438248H | 10/24/19 | 12/09/19 | 1/2020 | $12,500.00 | |
| Address: 510 EAST 126 ST NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 035438249J | 10/24/19 | 12/09/19 | 1/2020 | $12,500.00 | |
| Address: 54 EAST 126 ST NY 10035 | | | | | | |

Data Loaded: 8/19/2021

# DataTrace
## Documents related to: ECB's against 51 EAST 126 ST

### ECB's vs Premises as of 8/2021

This search for ECB's against 51 EAST 126 ST has returned 22 results (22 selected for print/export). Run on 9/13/2021

| Name | Violation # | Order Date | Notice Date | Docket Date | Balance | Satisfaction |
|---|---|---|---|---|---|---|
| 51 EAST 126 ST LLC | 035438247X | 10/24/19 | 12/09/19 | 1/2020 | $10,000.00 | |
| Address: 51 EAST 126 ST NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 035438475H | 10/24/19 | 12/09/19 | 1/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 032086892N | 3/02/17 | 4/17/17 | 6/2017 | $2,500.00 | |
| Address: 51 EAST 126 STREET NY 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457914Y | 1/23/20 | 3/09/20 | 4/2020 | $25,000.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457915X | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457916H | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457917J | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 0205614357 | 12/10/18 | 1/24/19 | 3/2019 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 042589541Z | 8/28/18 | 10/12/18 | 11/2018 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043509552H | 9/11/18 | 10/26/18 | 12/2018 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043801137Z | 7/11/16 | 8/25/16 | 10/2016 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043596706J | 8/25/17 | 10/10/17 | 11/2017 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043098939Z | 3/27/18 | 5/11/18 | 6/2018 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 0192338420 | 12/14/16 | 1/30/17 | 3/2017 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 046937908J | 5/24/21 | 7/08/21 | 8/2021 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM DIRAR | 011399772Y | 10/14/14 | 11/28/14 | 1/2015 | $549.18 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM DIRAR | 011328638P | 7/10/14 | 9/02/14 | 10/2014 | $506.24 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM DIRAR | 011427283Z | 6/01/15 | 7/16/15 | 8/2015 | $3,984.52 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM M.A. DINAR | 035034592X | 7/07/14 | 12/04/14 | 1/2015 | $119.34 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| ABDELRAHIM M.A. DIRAR | 035034591Y | 9/11/14 | 11/03/14 | 12/2014 | $976.37 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| MA DIRAR ABDEL RAHIM | 0189930905 | 3/21/16 | 5/05/16 | 6/2016 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126 ST LLC | 035438248H | 10/24/19 | 12/09/19 | 1/2020 | $12,500.00 | |
| Address: 510 EAST 126 ST NY 10035 | | | | | | |

Data Loaded: 8/19/2021

# DataTrace
## Documents related to: 51 EAST 126TH STREET

### Judgment Docket & Lien Information (from 1/01/1987 to 10/21/2021):

This search for Judgment/Liens against 51 EAST 126TH STREET in New York COUNTY from 8/30/2021 to Not Entered has returned 0 results for All Book Type. Run on 10/29/2021

### FTLs: (from 1/01/1994 to 10/21/2021)

This search for FTL's against 51 EAST 126TH STREET in New York COUNTY has returned 0 results. Run on 10/29/2021

### TAB Book Date: 10/21/2021

This search for TAB's against 51 EAST 126TH STREET has returned 0 results. Run on 10/29/2021
Data Loaded: 10/26/2021

### Parking Violations Filed Date: 10/26/2021

This search for PVB's against 51 EAST 126TH STREET has returned 0 results. Run on 10/29/2021
Data Loaded: 10/26/2021

### ECB's vs Name as of 10/2021

This search for ECB's against 51 EAST 126TH STREET has returned 15 results (15 selected for print/export). Run on 10/29/2021

| Name | Violation # | Order Date | Notice Date | Docket Date | Balance | Satisfaction |
|---|---|---|---|---|---|---|
| 51 EAST 126TH STREET LLC | 035457913M | 1/23/20 | 3/09/20 | 4/2020 | $25,000.00 | |
| Address: 1 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457916H | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457914Y | 1/23/20 | 3/09/20 | 4/2020 | $25,000.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457915X | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457917J | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043801137Z | 7/11/16 | 8/25/16 | 10/2016 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 0192338420 | 12/14/16 | 1/30/17 | 3/2017 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043509552H | 9/11/18 | 10/26/18 | 12/2018 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 042589541Z | 8/28/18 | 10/12/18 | 11/2018 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043098939Z | 3/27/18 | 5/11/18 | 6/2018 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043596706J | 8/25/17 | 10/10/17 | 11/2017 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 047089124Z | 7/27/21 | 9/10/21 | 10/2021 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 0205614357 | 12/10/18 | 1/24/19 | 3/2019 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 046937908J | 5/24/21 | 7/08/21 | 8/2021 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 047173020X | 6/28/21 | 8/12/21 | 9/2021 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |

Data Loaded: 10/26/2021

# DataTrace
## Documents related to: ECB's; Address: 51 EAST 126

### ECB's vs Premises as of 10/2021

This search for ECB's against 51 EAST 126 has returned 24 results (24 selected for print/export). Run on 10/29/2021

| Name | Violation # | Order Date | Notice Date | Docket Date | Balance | Satisfaction |
|---|---|---|---|---|---|---|
| 51 EAST 126 ST LLC | 035438247X | 10/24/19 | 12/09/19 | 1/2020 | $10,000.00 | |
| Address: 51 EAST 126 ST NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 032086892N | 3/02/17 | 4/17/17 | 6/2017 | $2,500.00 | |
| Address: 51 EAST 126 STREET NY 10035 | | | | | | |
| 51 EAST 126 ST LLC | 035438475H | 10/24/19 | 12/09/19 | 1/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET NY 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457916H | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457914Y | 1/23/20 | 3/09/20 | 4/2020 | $25,000.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457915X | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 035457917J | 1/23/20 | 3/09/20 | 4/2020 | $6,250.00 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043801137Z | 7/11/16 | 8/25/16 | 10/2016 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 0192338420 | 12/14/16 | 1/30/17 | 3/2017 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043509552H | 9/11/18 | 10/26/18 | 12/2018 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 042589541Z | 8/28/18 | 10/12/18 | 11/2018 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043098939Z | 3/27/18 | 5/11/18 | 6/2018 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 043596706J | 8/25/17 | 10/10/17 | 11/2017 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 047089124Z | 7/27/21 | 9/10/21 | 10/2021 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 0205614357 | 12/10/18 | 1/24/19 | 3/2019 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 046937908J | 5/24/21 | 7/08/21 | 8/2021 | $25.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126TH STREET LLC | 047173020X | 6/28/21 | 8/12/21 | 9/2021 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM DIRAR | 011328638P | 7/10/14 | 9/02/14 | 10/2014 | $506.24 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM DIRAR | 011399772Y | 10/14/14 | 11/28/14 | 1/2015 | $549.18 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM DIRAR | 011427283Z | 6/01/15 | 7/16/15 | 8/2015 | $3,984.52 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| ABDELRAHIM M.A. DINAR | 035034592X | 7/07/14 | 12/04/14 | 1/2015 | $119.34 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| ABDELRAHIM M.A. DIRAR | 035034591Y | 9/11/14 | 11/03/14 | 12/2014 | $976.37 | |
| Address: 51 EAST 126 STREET MANHATTAN 10035 | | | | | | |
| MA DIRAR ABDEL RAHIM | 0189930905 | 3/21/16 | 5/05/16 | 6/2016 | $300.00 | |
| Address: 51 EAST 126 STREET NEW YORK 10035 | | | | | | |
| 51 EAST 126 ST LLC | 035438248H | 10/24/19 | 12/09/19 | 1/2020 | $12,500.00 | |

| | | |
|---|---|---|
| 51 East 126Th Street Llc<br>51   EAST 126 STREET<br>NEW YORK   NY   10035 | **ECB Viol No.** 46937908J<br>**DECISION DATE:** 05/24/21<br>**ECB BOOK DATE:** 08/31/21 | **JUDGMENT DATE:** 07/08/21<br>Original Amount: $25.00 Interest: $.83 Total<br>Due: $25.83 Good to 1/12/2022 |
| 51 East 126Th Street Llc<br>51   EAST 126 STREET<br>NEW YORK   NY   10035 | **ECB Viol No.** 47173020X<br>**DECISION DATE:** 06/28/21<br>**ECB BOOK DATE:** 09/30/21 | **JUDGMENT DATE:** 08/12/21<br>Original Amount: $300.00 Interest: $7.69<br>Total Due: $307.69 Good to 1/12/2022 |
| 51 East 126Th Street Llc<br>51   EAST 126 STREET<br>NEW YORK   NY   10035 | **ECB Viol No.** 47089124Z<br>**DECISION DATE:** 07/27/21<br>**ECB BOOK DATE:** 10/31/21 | **JUDGMENT DATE:** 09/10/21<br>Original Amount: $300.00 Interest: $5.40<br>Total Due: $305.40 Good to 1/12/2022 |
| 51 East 126Th Street Llc<br>51   EAST 126 STREET<br>NEW YORK   NY   10035 | **ECB Viol No.** 46985793P<br>**DECISION DATE:** 09/17/21<br>**ECB BOOK DATE:** 12/31/21 | **JUDGMENT DATE:** 11/01/21<br>Original Amount: $25.00 Interest: $.07 Total<br>Due: $25.07 Good to 1/12/2022 |